FOREST GLEN COMMUNITY HOMEOWNERS ASSOCIATION, Plaintiff-Appellee, *v.* THOMAS P. NOLAN, Defendant-Appellant.

Second District No. 81-449

Opinion filed February 25, 1982.

Stuart Berks and Marc W. Sargis, both of Des Plaines, for appellant.

Henry S. Stillwell, of Rathje, Woodward, Dyer and Burt, of Wheaton, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The Forest Glen Community Homeowners Association sought injunctive relief to enforce a restrictive covenant against the storing or parking of recreational vehicles in the open on the property of the defendant, Thomas P. Nolan. The trial court granted a permanent injunction, and the homeowner appeals. He contends that injunctive relief is inappropriate because the restriction was vague and indefinite, the court failed to balance the equities, and the restriction denied due process.

The restrictive covenant provides:

"*Section 7. Restriction on Vehicles.*

No boat, airplane, trailer, truck, house trailer, motorized recreational vehicle, commercial vehicle, or snowmobile shall be stored (permanently or temporarily) in the open on any of the Property, except that conventional passenger vehicles of the Owners, Occupants and their guests shall be permitted to be parked on the Owner's driveway. The Parkway located between the pavement and the Lot Line Front of each Lot shall not be used for the parking of any private or commercial vehicles, boats, trailers, trucks, recreational vehicles, or snowmobiles. The term 'Commercial Vehicles' shall include all automobiles, station-wagons, trucks or vehicular equipment which shall bear signs or have printed on the side of same reference to any commercial undertaking."

There was evidence at the hearing that Forest Glen Subdivision contains approximately 100 homes, each having an average fair market value of $228,000. When the covenant was framed in 1976 the local municipality of Oak Brook had not passed any ordinance restricting the locating of recreational vehicles in the open on residential property. The general purpose of the declaration as pertinent was stated in article I: "to protect each Owner * * * from such improper use of surrounding lots as may depreciate the value of their property * * * and, in general, to

provide adequately for a residential subdivision of the highest quality and character * * *."

There was testimony that there were complaints from homeowners starting in 1980 concerning a boat on defendant's property. The boat, a 25-foot cabin cruiser, was situated at various times along the defendant's garageway on an asphalt apron or in the U-shaped driveway. There it was visible to neighbors or passersby. The defendant was notified of the violation by registered mail and the president of the association testified that when he talked with defendant the latter said he would keep the craft on the property during the summer until he could find moorings for it. In 1980, the boat was seen on the property from 100-150 occasions at various times during the week and on weekends. There was also testimony that snowmobiles were kept on the defendant's property during the winter and that although the defendant said he would remove them he did not do so. The president of the association testified that he considered "storing" a "consistent thing" whereas "parking" he considered "intermittent." He said that he never saw the boat on the parkway.

The draftsman of the covenant testified that it was designed to deal with the "problem" of residents keeping recreational vehicles on their property, and that the homeowners had requested the covenant to alleviate this practice.

There was also testimony for the association that another neighbor had seen the craft located at different times on the asphalt or apron or in the driveway in open view for 100-110 days from the middle of May to the middle of September 1980 and that snowmobiles were also seen on the property during 1980.

Nolan testified, denying that he kept the cruiser on the premises from the middle of May to the beginning of July 1980. He said that when he did intend to take the boat out on a given day he would remove it the preceding night from the warehouse where he leased space and leave it overnight beside the garage and to the rear of the house. He explained that he brought the boat on the property the night before to prepare it for sailing the next day and that after boating he would return it the same day or the next day to the warehouse unless he intended to use it again the next day or the day after. Nolan acknowledged receiving notice and stated that he continued to bring the cruiser onto his property during the summer because he could not find a mooring. He said that between April and September of 1980, the boat was located on his property for no more than one-fourth of the time. He also said that he kept four snowmobiles on his property, but they were never on his property for more than a weekend, and then only twice during the last winter. On cross-examination he conceded that the boat had been on the property for more than 24 hours at a time, 10-12 times during the summer of 1980, that the craft was

on the premises in the open 50-60 nights during that time, and also continuously for a week in the latter part of August.

The trial court, in finding that the defendant had violated the covenant, defined "storing" and "parking" in the following terms:

"Store, stored, storing: Storing means the standing of an unoccupied vehicle otherwise than when temporarily and actually engaged in loading or unloading merchandise or passengers.

Park, parked, parking: Parking means the standing of a vehicle whether occupied or not including when temporarily and actually engaged in loading or unloading merchandise or passengers."

The court permanently enjoined defendant from "locating" any restricted vehicle on the property in violation of the covenant, and by a later order clarified the judgment by finding that overnight location violated the covenant.

The defendant principally argues that the covenant is vague and indefinite. The first sentence of the covenant prohibits the open storing of certain vehicles on the property but excepts conventional passenger vehicles parked in the driveway; the next sentence forbids the parking of the specified vehicle in the parkway located between the pavement and the front line of the subject lot. Therefore, he concludes, the covenant is silent on whether the owner may *park* the designated vehicles, as opposed to *store*, outside on the property other than on the parkway. The defendant additionally argues that the Homeowners Association, by not bringing suit in 1978 and 1979 when the homeowner also kept recreational vehicles on the property, similarly read the covenant to permit parking. Finally, he contends that "parking," when given its ordinary meaning, permits overnight locating.

■■ The extraordinary remedy of injunction shall not issue to enforce a covenant which is indefinite and uncertain. (*Cleveland v. Martin* (1905), 218 Ill. 73, 90; *Freehling v. Development Management Group, Inc.* (1979), 75 Ill. App. 3d 243, 246.) The proper interpretation of a covenant is a question of law, and the covenant is to be construed so as to give effect to the actual intent of the parties when the covenant was made. (*Cimino v. Dill* (1980), 92 Ill. App. 3d 345, 348.) Even though the covenant is strictly construed in favor of free use of property, this rule may not defeat the obvious purpose of the restrictions or the clear intent of the parties, if not precisely expressed. *Freehling v. Development Management Group, Inc.* (1979), 75 Ill. App. 3d 243, 248.

The general purposes stated in the declaration of restrictions as well as the restrictions as a whole demonstrate a strong intention and concern to establish a tranquil and aesthetically pleasing environment for residential life. Thus, the references to a subdivision of the "highest quality and character," the encouragement of "attractive improvements," the preven-

tion of "inharmonious" improvements, the provisions against "offensive activities," including planting "unsightly plants," against outside antennas, regulating the size and location of name plates and lighting which could disturb adjoining lots, are all examples of the general concern and intention.

Initially we note that when recreational vehicles are continually kept outside in a single-family neighborhood, they can adversely affect its character and integrity. (See *City of Pepper Pike v. Landskroner* (1977), 53 Ohio App. 2d 63, 371 N.E.2d 579, 586.) Here, the draftsman testified that the residents had requested a covenant to alleviate an apparently common practice and the testimony was material to a proper interpretation of the restrictions. *Cimino v. Dill* (1980), 92 Ill. App. 3d 345, 349.

The covenant on its face does not clearly prohibit parking of a recreational vehicle, but does prohibit storage, permanent or "temporary." "Storage," connoting a certain degree of permanency, is customarily distinguished from "parking," which connotes transience. (See cases collected in 5 P. J. Rohan, Zoning and Land Use Control §36.03(11)(k) n.100 (1981).) Here, "storage" is qualified by "temporary," and interpretation, consistent with the intent and purpose of the covenant, is necessary to give the terms meaning.

■■ We conclude that the parking of snowmobiles and a 25-foot boat on its trailer, at times other than when the owner is actually engaged in loading or unloading, would defeat the purpose behind the covenant. The subdividers clearly intended the covenant to alleviate what they saw as the "problem" of recreational vehicles continually on residential property. It is unlikely they intended to ban temporary open storage and not likewise prohibit locating of a recreational vehicle not actually engaged in loading or unloading: both describe the placing of an unoccupied vehicle on property until it is about to be again put into service and use. By definition, the parking which is permitted minimizes the obtrusiveness of such vehicles for other homeowners in the neighborhood, and is consistent with the underlying purpose to alleviate the "problem" caused by owners who keep recreational vehicles on residential property.

The construction which the defendant suggests, that the prohibition against temporary storage does not preclude the practice of overnight locating, is unreasonable, for it would defeat the underlying purpose.

The fact that the Homeowners Association failed to file suit in 1978 and 1979 is not persuasive in view of the fact that they considered defendant's conduct to be a violation of the terms of the restriction.

■■ The further contention of the homeowner that the court failed to balance the equities is also not persuasive. The breach of a covenant is sufficient reason to enjoin its violation and a complainant need not show substantial comparative injury. (*Freehling v. Development Management*

*Group, Inc.* (1979), 75 Ill. App. 3d 243, 246-47; *Cordogan v. Union National Bank* (1978), 64 Ill. App. 3d 248, 252-53.) Moreover, the record indicates that defendant proceeded with prior knowledge and direct notice of the restrictions. Courts are not required to balance the equities under these circumstances. *Moore v. McDaniel* (1977), 48 Ill. App. 3d 152, 166.

The owner's due process argument actually presents no constitutional question but simply questions the soundness of the judgment. Essentially the defendant argues that by enforcing what he considers to be a vague restriction and creating definitions of "temporary storage" and "parking" which are not in the declarations, the court deprived the defendant of the use of his property in an unreasonable and arbitrary manner. However, "due process is not a guaranty against erroneous or unjust decisions by the courts which have jurisdiction of the parties and the subject matter." (*Kazubowski v. Kazubowski* (1970), 45 Ill. 2d 405, 413.) The so-called due process argument is nothing more than an attack upon the soundness of the judgment as tested by familiar rules of equity and fails to raise an issue of constitutional dimensions. See *Moore v. McDaniel* (1977), 48 Ill. App. 3d 152, 164-65.

We thus conclude that the covenant prohibits parking in the open of recreational vehicles except for those minimal intrusions when the owner is actually engaged in loading or unloading. The record indicates that the defendant has violated the restrictions by parking his boat and snowmobiles in the driveway at times other than when he is actually engaged in loading or unloading. The judgment order of the trial court is therefore affirmed.

Affirmed.

UNVERZAGT, J., concurs.

JUSTICE VAN DEUSEN, dissenting:
I respectfully dissent from the majority's opinion. The restrictive covenant in question in this matter provided in pertinent part as follows:

"No boat, airplane, trailer, truck, house trailer, motorized recreational vehicle, commercial vehicle, or snowmobile shall be stored (permanently or temporarily) in the open on any of the Property, * * * The Parkway located between the pavement and the Lot Line Front of each Lot shall not be used for the parking of any private or commercial vehicles, boats, trailers, trucks, recreational vehicles, or snowmobiles."

The majority finds that the record indicates that the defendant had violated the restrictions in the covenant by parking his boat and snowmo-

biles in the driveway at times other than when he was actually engaged in loading or unloading. I agree that the evidence did disclose that the defendant parked his boat on his driveway in the summer and his snowmobiles on his driveway in the winter for brief periods of time between uses, usually overnight. I cannot agree with the majority that the defendant thereby violated the restrictive covenant in question.

Restrictions which interfere with the free use of property are not favored in law. (*Arndt v. Miller* (1957), 14 Ill. App. 2d 424, 427.) It is also well established that the primary purpose of the construction of a deed is to ascertain the intentions of the parties, which is gathered by giving effect to every word and rejecting none if it can be done without violating any positive rule of law; it is equally well recognized in the law that restrictive covenants are strictly construed in favor of the full and unlimited legitimate use of property and, where there is any doubt, the matter must be resolved in favor of natural rights and against restrictions. (*Watts v. Fritz* (1963), 29 Ill. 2d 517, 521.) The intent of the parties must be determined from the language of the agreement alone where it is not ambiguous, and the language is not rendered ambiguous simply because the parties do not agree upon its meaning. (See *Harris v. American General Finance Corp.* (1977), 54 Ill. App. 3d 835, 839.) The intention of the parties is to be determined from the language of the agreement, and words should be given their common and generally accepted meaning. See *Crane v. Mulliken* (1980), 86 Ill. App. 3d 1076, 1081.

The words used in the covenant in question are common words with a generally accepted meaning, and I can discern no ambiguity arising from their use in this matter. The verb "store" or "storing" means "to lay up against a future need; to hoard" and the verb "park" or "parking" means "to leave a [vehicle] in a certain place temporarily." (Webster's Dictionary of the English Language Unabridged (1977).) Implicit in the meaning of "store" or "storing" is a giving up of any present intent to use until sometime in the future when the item or matter is removed from storage; whereas, the meaning of "park" or "parking" carries with it a continuous, but interrupted, intent to use.

The simple and readily understood language of the covenant prohibited the defendant from storing his boat and snowmobiles in the open anywhere on his property at any time. It also advised him in no uncertain language that he could not park his boat or his snowmobiles on the parkway of his property. It did no more than that. It did not prohibit him from parking his boat or snowmobiles on or alongside his driveway. Therefore, I would find that the defendant's actions did not violate the restrictions in the covenant.