# Illinois Official Reports

## Appellate Court

---

*Neufairfield Homeowners Ass'n v. Wagner*,
**2015 IL App (3d) 140775**

---

| | |
|---|---|
| Appellate Court Caption | NEUFAIRFIELD HOMEOWNERS ASSOCIATION, Plaintiff-Appellant, v. KEVIN WAGNER, MELISSA WAGNER, and KIDS ON THE GO DAYCARE, INC., Defendants-Appellees.– NEUFAIRFIELD HOMEOWNERS ASSOCIATION, Plaintiff-Appellant, v. STEVEN P. GURLEY, DENISE M. GURLEY, and PATRICIA A. MADER, Defendants-Appellees. |
| District & No. | Third District<br>Docket Nos. 3-14-0775, 3-15-0003 cons. |
| Rule 23 order filed<br>Motion to publish<br>allowed<br>Opinion filed | September 25, 2015<br><br>November 4, 2015<br>November 4, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Will County, Nos. 14-CH-118, 13-CH-3805; the Hon. John Anderson, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Anna Stanley Kahriman and Thomas W. Toolis (argued), both of
Frankfort Law Group, of Frankfort, for appellant.

Gary S. Mueller (argued), of Gary S. Mueller & Associates, Ltd., of
Joliet, for appellees Kids On The Go Daycare, Inc., Kevin Wagner,
and Melissa Wagner.

Scott Pyles (argued), of Rathbun, Cservenyak & Kozol, LLC, of
Joliet, for other appellees.

Panel

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justices Carter and Holdridge concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Neufairfield Homeowners Association (NHOA), sought declaratory relief to
enforce a restrictive covenant prohibiting the operation of two daycare businesses against
homeowners, Kevin and Melissa Wagner and Steven and Denise Gurley. The trial court
granted summary judgment in favor of the homeowners and NHOA appeals. We affirm.

¶ 2                                    BACKGROUND
¶ 3     NHOA is the homeowners association for a subdivision known as Neufairfield. The
development includes approximately 500 residential lots. There is only one entrance into and
out of the subdivision.

¶ 4     In September of 2004, NHOA recorded a declaration of covenants, conditions and
restrictions, which set forth the developer's purpose of developing single family homes and
provided for the formation of the homeowners association.

¶ 5     To promote the development of single family homes, section 3.1 of the declaration states
that "[a]ll Lots shall be used only for Single Family Dwellings." Section 3.12 lists certain
exceptions for the operation of personal businesses:

        "Personal Business. The restriction in Section 3.1 shall not, however, be construed in
        such a manner as to prohibit an Owner from: a) maintaining his personal professional
        library therein; or b) keeping his personal business records or accounts therein; or c)
        handling his personal or professional telephone calls or correspondence therefrom; or
        d) operate [*sic*] a home-based business, but only if (i) the business is conducted within
        the residence, (ii) the business is not prohibited by the ordinances or regulations of the
        City and (iii) no motor vehicle with business markings is parked on the Lot or Common

Area overnight ***. Such uses are expressly declared customarily incident to the principal residential use and not in violation of said section."

Section 3.13 further provides:

"Other Commercial Activities. No commercial activities of any kind whatsoever shall be conducted in any building or any portion of the property except as provided in Section 3.12 hereof; no such activities shall require or allow customers or the public to frequent the Property for such home occupation."

¶ 6    In September 2013, Kevin and Melissa Wagner purchased a lot within the Neufairfield subdivision. Melissa operates a home-based daycare center from the residence between the hours of 6 a.m. and 6:30 p.m., Monday through Friday. She is licensed by the state to provide daycare services for a maximum of seven children and currently provides services for that number.

¶ 7    Steven Gurley also owns a lot in the Neufairfield subdivision. His wife, Denise, operates a home-based daycare business from the residence and is licensed to care for as many as eight children at a time. She also provides full-day daycare services Monday through Friday.

¶ 8    In late 2013 and early 2014, NHOA filed complaints against the Wagners and the Gurleys for declaratory and injunctive relief. In its amended complaint against the Wagners, NHOA argued that section 3.13 of the association's declaration prohibited the operation of a commercial activity that requires customers to frequent the property and maintained that Melissa's business resulted in frequent commercial traffic in and around the Wagner residence. In its complaint against the Gurleys, NHOA maintained that sections 3.12 and 3.13 prevented Denise from operating her daycare business from the Gurley residence for similar reasons.

¶ 9    Both defendants filed motions for summary judgment. In an affidavit in support of the Wagners' motion, Melissa Wagner stated that she was licensed through the State to provide services to seven or fewer children, that the City of Joliet informed her that no special use permit was required to operate a home-based daycare center, and that her daycare business did not violate any ordinance or resolution of the City of Joliet. Denise Gurley's affidavit averred that she was licensed through the State to operate a home-based daycare center for eight or fewer children, that the city informed her that she did not need a special use permit, and that her daycare business did not violate any city ordinance or resolution. Denise's affidavit further stated that she typically provided services to five or six children at a time and that three to four of those children walked to her residence.

¶ 10   In response to the Wagners' motion, NHOA submitted an affidavit signed by Larry Miller, the president of NHOA's property management company, stating that he had received multiple complaints from members of the association that defendants' businesses were "prohibited by Neufairfield Homeowners Association's Declaration of Covenants, Conditions and Restrictions."

¶ 11   NHOA also filed a responsive pleading to the Gurley's motion for summary judgment alleging that the activity the daycare created violated the declaration. NHOA attached to its response an affidavit submitted by another Neufairfield homeowner stating that she had "observed multiple cars (four to six) coming to and going from the Subject Property in the morning and, again, in the evening on a daily basis between Monday and Friday."

¶ 12   The trial court conducted hearings on the motions in both cases. At the conclusion of the hearings, the court determined that the small number of children that attended the daycare

businesses would not result in the public "frequenting" the property. The court found that defendants' home-based daycare centers were not in violation of section 3.13 of the declaration and entered summary judgment in their favor. Though defendants filed separate notices of appeal in circuit court, we granted their joint motion to consolidate.

¶ 13                                      ANALYSIS

¶ 14        NHOA argues that the trial court erred in granting summary judgment because genuine issues of material fact preclude judgment as a matter of law. Specifically, NHOA argues that a genuine issue exists as to whether the additional vehicles going to and coming from defendants' daycare businesses constitute "frequent" commercial traffic prohibited by section 3.13 of the declaration.

¶ 15        Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his or her burden of proof by affirmatively showing that some element of the case must be resolved in his favor or by establishing that there is an absence of evidence to support the nonmovant's case. *Id*. The purpose of summary judgment is not to try an issue of fact but to determine whether a triable issue of fact exists. *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002). We review *de novo* an order granting summary judgment. *State Farm Mutual Automobile Insurance Co. v. Progressive Northern Insurance Co.*, 2015 IL App (1st) 140447, ¶ 63

¶ 16        Generally, restrictive covenants affecting land rights will be enforced according to their plain and unambiguous language. *Levitt Homes, Inc. v. Old Farm Homeowners' Ass'n*, 111 Ill. App. 3d 300, 308 (1982). In interpreting a covenant, the goal of the court is to give effect to the actual intent of the parties when the covenant was made. *Forest Glen Community Homeowners Ass'n v. Nolan*, 104 Ill. App. 3d 108, 111 (1982). The language of a declaration of subdivision covenants, conditions and restrictions is determinative of the developer's intent, and the declaration is construed most strongly against the developer as its author. *Levitt Homes*, 111 Ill. App. 3d at 308. Covenants should be strictly construed so that they do not extend beyond that which is expressly stipulated; all doubts must be resolved in favor of the free use of property and against restrictions. *Fairways of Country Lakes Townhouse Ass'n v. Shenandoah Development Corp.*, 113 Ill. App. 3d 932, 935 (1983).

¶ 17        In the absence of a definition within the covenant, words used in the declaration should be given their ordinary and commonly understood meanings. See *Forest Glen*, 104 Ill. App. 3d at 112. The dictionary can be used as a resource to determine the ordinary and popular meaning of a word. *Bailey v. Illinois Liquor Control Comm'n*, 405 Ill. App. 3d 550, 555 (2010).

¶ 18        In this case, the argument presented to the trial court was whether the volume of traffic from defendants' daycare clients reached an intensity that violated the "frequent" prohibition in section 3.13. NHOA did not dispute that defendants' businesses satisfied the requirements set forth in section 3.12. The trial court found it unnecessary to hold a hearing. Given that the facts were not in dispute, the trial court did not err in interpreting the term "frequent" as a matter of law without conducting an evidentiary hearing.

¶ 19 A homeowner's association has the authority to interpret the covenants, conditions and restrictions in its declaration. See *Forest Glen*, 104 Ill. App. 3d at 110-11. However, it is not free to ignore the express language of the declaration. See *Fairways of Country Lakes Townhouse Ass'n*, 113 Ill. App. 3d at 935. Section 3.12 allows an owner to conduct a business within the residence if the business is not prohibited by the city's ordinances or regulations and no motor vehicles with the business logo are parked on the lot or common area overnight. NHOA does not dispute that defendants' daycare businesses met these criteria and are therefore "incident to the principal residence" as stated in section 3.13. Nevertheless, NHOA claims that defendants' must cease and desist their daycare services because their commercial activities, while permissible under section 3.12, require customers to "frequent" the property in violation of section 3.13.

¶ 20 Frequent is not defined in the declaration. Webster's Third New International Dictionary defines "frequent" as "given to some practice : HABITUAL, PERSISTENT." Webster's Third New International Dictionary 909 (1981). Construing the covenant strictly against the developer and in favor of free use of property, the plain language of section 3.12 and 3.13 intends to allow home-based businesses. Nothing in the record suggests that seven or eight cars entering and leaving the subdivision in the morning and then again in the evening is "habitual, persistent" commercial activity that would thwart the intent of a single family subdivision. Our analysis leads us to the same conclusion that the trial court reached, that the few additional cars entering and leaving the subdivision due to defendants' daycare businesses do not constitute frequent commercial traffic in violation of section 3.13.

¶ 21 We find that summary judgment was also appropriate because the plain language of the declaration demonstrates that the drafters did not intend section 3.13 to apply to the homeowners' daycare businesses. Section 3.12 is entitled "Personal Business" and provides exceptions for certain home-based businesses operated within the subdivision. As it follows, the plain and unambiguous title of section 3.13 states: "Other Commercial Activities." That phrase indicates that section 3.13 applies to commercial businesses other than those personal businesses allowed under the previous section, section 3.12. The parties agree that defendants' daycare operations are permissible personal businesses as stated in section 3.12. Thus, section 3.13 does not apply to the factual scenario presented in this case. Accordingly, we affirm the trial court's order granting summary judgment in defendants' favor.

¶ 22                                          CONCLUSION
¶ 23 The judgment of the circuit court of Will County is affirmed.

¶ 24 Affirmed.