2023 IL App (1st) 221416-U

No. 1-22-1416

Order filed August 8, 2023

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| CHESTER CARRARA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 2020-L-006215 |
| | ) | |
| MIDLAND PAPER COMPANY, | ) | Honorable |
| | ) | Michael F. Otto, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE MITCHELL delivered the judgment of the court.
Presiding Justice Delort and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's grant of summary judgment in favor of plaintiff on his breach of contract claim because the plain language of the employment agreement's commission clause provides that defendant is to compensate plaintiff for his performance as a sales representative.

¶ 2    Defendant Midland Paper Company appeals a grant of summary judgment in favor of plaintiff Chester Carrara determining that Midland breached the employment agreement and owes Carrara his sought commission. The issue presented is whether the circuit court erred in entering judgment as a matter of law by dismissing Midland's affirmative defense that Carrara materially

breached the parties' employment agreement because he held secondary occupations, potentially breaching the performance clause of the agreement. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4      Carrara began employment at Midland in January 2003 as a general manager. His employment agreement was amended twice afterwards. The first amendment reduced Carrara's compensation per a deferral of pay, and the second amendment promoted Carrara from a general manager to a sales representative and altered the terms of his compensation. More specifically, the second amendment removed the entirety of previous compensation language in the employment agreement and replaced it with a commission clause. The commission clause stated that the employee was to receive 3-1/3% of Midland's annual pre-tax income from the branch where Carrara worked. In May 2015, Carrara resigned.

¶ 5      In September 2019, Carrara brought suit against Midland for not paying him certain profit-sharing payments between 2008 and 2015. Carrara raised two alternative claims: (1) Midland breached the employment agreement and (2) Midland was unjustly enriched. In filing its answer, Midland provided several affirmative defenses, one of which pled that Carrara materially breached the performance of his role by holding secondary jobs. Specifically, Midland referenced the performance clause of the employment agreement, which dictates that Carrara was to comply with all company rules and policies, including the secondary employment provision. The provision states that an employee may hold secondary jobs as long as the employee meets performance standards and the outside employment does not present a conflict of interest with Midland. Since Midland did not realize Carrara's potential breach until after his employment terminated, Midland

sought discovery to further investigate the facts, arguing that it should be released from fully performing the employment agreement.

¶ 6    Carrara moved for summary judgment on his breach of contract claim. The circuit court granted Carrara's motion in his favor based on the contract's cause provision, reasoning that Midland's affirmative defense fails as a matter of law. The circuit court entered judgment on the breach of contract claim for Carrara and against Midland in the amount of $303,752.65 plus interest. Midland timely appealed. Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 7                                    ANALYSIS

¶ 8    Midland argues that the circuit court erred in granting Carrara's motion for summary judgment because Carrara's employment was not terminated for "cause" and a genuine issue of material fact exists on Midland's affirmative defense. Carrara argues Midland's affirmative defense that Carrara materially breached the employment agreement first fails as a matter of law. We review a grant of summary judgment *de novo*. *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 17.

¶ 9    Summary judgment is proper only when the pleadings, depositions, admissions, and affidavits, when viewed in a light most favorable to the nonmovant, reveal that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005; *Progressive Universal Insurance Co. v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 127-28 (2005). The movant may meet its burden by affirmatively showing that some element of the case must be resolved in its favor or by establishing that there is an absence of evidence to support the nonmovant's case. *Neufairfield Homeowners Association v. Wagner*, 2015 IL App (3d) 140775, ¶ 15. Summary judgment is a drastic means of disposing of litigation and should be

granted only when the right to it is clear and free from doubt. *Allstate Insurance Co. v. Tucker*, 178 Ill. App. 3d 809, 812 (1989).

¶ 10    "The interpretation of a contract is a question of law and therefore may be decided on a motion for summary judgment." *WLM Retail Trust v. Tramlaw Remainderman Ltd. Partnership*, 2018 IL App (1st) 170819, ¶ 16 (citing *Joyce v. Mastri,* 371 Ill. App. 3d 64, 74 (2007)). When evaluating a contract, our main objective is to determine the parties' intentions at the time the contract was created. *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 77 (citing *In re Doyle,* 144 Ill. 2d 451, 468 (1991)). A contract is construed as a whole "[b]ecause words derive their meaning from the context in which they are used." *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007).

¶ 11    The employment agreement's compensation provision explains that Midland is to pay Carrara a 3-1/3% commission for his services:

"Compensation: Company shall pay to Employee as follows:

(a) Commissions. Beginning on January 1, 2005, Employee's compensation will be converted to a commission based plan specifically designed for the Bloomington-Normal Division ***.

(b) Profit-sharing. During the term of this Agreement, Employee will be eligible to receive 3-1/3% of the annual pre-tax income of Company's Bloomington/Normal Division if, and only if, the Division has cumulative pre-tax income. *** *In accordance with the terms of Paragraph 3, above, this profit sharing provision shall survive the termination of this Agreement, regardless of the reason(s) for termination, as long as Company employs Employee*." (Emphasis added.)

¶ 12    The termination clause lists four types of employment terminations: termination by "mutual agreement," by "expiration of agreement," by "death or disability," and for "cause." The "mutual agreement" termination provision provides that an "employee's employment *** may be terminated at any time by the mutual, written agreement of Employee and Company." For a termination by mutual agreement, an employee "shall not receive further compensation unless the parties provide for such compensation in a written agreement." In comparison, the "cause" provision defines "cause" and provides that a termination of this type results in the payment of any accrued obligations to the employee:

" 'Cause' shall mean Employee's: *** (v) breach of a fiduciary duty owed to Company; (vi) *breach of a material Company policy*; or (vii) willful and substantial nonperformance of assigned duties ***. *Upon termination of this Agreement for 'Cause,' the only obligation of Company to Employee*, except for the continuation of medical coverage as required by law, *shall be the payment of any accrued, but unpaid, obligations*." (Emphases added.)

Additionally, the employment agreement provides that an amendment or modification is only valid when Midland makes it in writing and Carrara signs it.

¶ 13    Carrara served as a sales representative at Midland in exchange for compensation, and Midland was to pay Carrara a 3-1/3% commission when the division had cumulative pre-tax income. The record establishes that Midland had cumulative pre-tax income between 2008 and 2015 and that Midland did not compensate Carrara for the complete 3-1/3% commission. The employment agreement plainly states that the profit-sharing provision is to endure the agreement's termination. Additionally, the employment agreement does not contain any language that allows Midland to avoid paying Carrara's compensation, and Midland had neither

amended nor modified the employment agreement to stipulate otherwise. As a result, regardless of how Carrara terminated his employment, he is entitled to the 3-1/3% commission given the plain language of the contract.

¶ 14    Lastly, Midland argues the circuit court erred in granting Carrara's motion for summary judgment because Carrara's potential material breach terminated Midland's obligations under the employment agreement. The performance clause specifies that Carrara must adhere to all company rules and policies, which are listed in the employee handbook and include the secondary occupations provision. Midland asserts that "*any* contract is terminable upon the occurrence of a material breach." (Emphasis in original.) *Rico Industries, Inc. v. TLC Group, Inc.*, 2014 IL App (1st) 131522, ¶ 24 (citing *Jespersen v. Minnesota Mining & Manufacturing Co.*, 183 Ill. 2d 290, 294 (1998)). However, the plain language of the "cause" provision provides that "cause" includes a breach of a material company policy, such as a violation of the secondary occupations provision. The "cause" provision also provides a remedy—the payment of any accrued, but unpaid obligations. As a result, while Carrara ultimately terminated his employment by resigning, even in a situation where Midland terminated him for "cause," Midland agreed to pay him any accrued, but unpaid obligations. Midland's defense therefore fails as a matter of law.[1]

¶ 15                              CONCLUSION

¶ 16    The judgment of the circuit court of Cook County is affirmed.

---

[1]Midland argues that since the non-exhaustive clause lists four different terminations with four different remedies, different situations result in different remedial options. However, Midland's defense is that Carrara potentially material breached. A material breach falls under the "cause" provision, which provides an appropriate remedy in the contract's plain language.

¶ 17   Affirmed.