YORKSHIRE VILLAGE COMMUNITY ASSOCIATION, Plaintiff-Appellee and Cross-Appellant, v. WILLIAM W. SWEASY, Defendant-Appellant and Cross-Appellee.

Third District   No. 3—87—0597

Opinion filed May 20, 1988.—Rehearing denied June 29, 1988.

William W. Sweasy, of Peoria, for appellant *pro se.*

Cusak & Fleming, P.C., of Peoria (Michael A. Fleming, of counsel), for appellee.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The defendant, William Sweasy, appeals from the judgment of the circuit court of Peoria County which granted plaintiff's motion for summary judgment. The plaintiff, Yorkshire Village Community Association (Yorkshire), a condominium owners' association, sought an injunction to have Sweasy remove certain flower box planters which he had placed on the sides of his driveway, allegedly in violation of the condominium declarations and restrictions. Yorkshire also appeals from the denial of its request for attorney fees.

Sweasy is a condominium owner and was a member of the board of trustees of Yorkshire when the events leading to this suit took place. This suit was initiated after Sweasy had built two flower box planters, one on each side of his driveway. The planters were 10 to 10½ feet long, 2 to 2½ feet wide, and varied in height from 1 to 2½ feet in staggered heights up Sweasy's sloping driveway. They extend the distance from Sweasy's residence to the sidewalk. During construction of the planters, Sweasy was advised by the president of York-

shire that he should seek board approval prior to constructing and maintaining these planters. Sweasy stated that he did not need Yorkshire's approval and completed the work. At the next board meeting, Yorkshire concluded that the planters fell within an area regulated by the association and, with Sweasy abstaining, voted unanimously to ask Sweasy to remove the planters. When Sweasy failed to comply, Yorkshire initiated the injunction proceedings.

Yorkshire contends that construction of the planters are subject to its approval under articles VII and VIII of the declarations and restrictions. In pertinent part, those restrictions read as follow:

"ARTICLE VII—Architectural Control. No building, fence, wall or other structure shall be commenced, erected or maintained upon the Properties, nor shall any exterior addition to or change or alteration thereto be made until the plans and specifications showing the nature, kind, shape, height, materials and locations of the same shall have been submitted to and approved in writing as to harmony of external design and location in relation to surrounding structures and topography by the Board of Trustees of the Association, or by an architectural committee composed of three or more representatives appointed by the Board.

\* \* \*

ARTICLE VIII—Use of Property.

Sec. 2. Alterations and Additions. No building, structures, dwelling, garage, carport or breezeway shall be erected nor shall any alteration or addition to or repainting of the exterior thereof be made unless it conforms in architecture, material and color to the dwelling as originally constructed by the developer."

According to Sweasy, the planters were constructed at considerable expense, "cannot be utilized in any other location and have no other use or purpose by virtue of their custom design." After Yorkshire filed its complaint, Sweasy filed eight affirmative defenses based on the following grounds: (1) the planters were not "structures" and therefore could not be regulated, (2) estoppel, (3) waiver, (4) prior arbitrary enforcement including one act of retroactive approval, (5) the existence of an adequate remedy at law, (6) failure to state a cause of action, (7) unclean hands, and (8) overbreadth of the restrictions. Upon Yorkshire's motion, the trial court struck all the affirmative defense except the one relating to estoppel. Both parties filed motions for summary judgment, and after argument, the court took the matter under advisement and ultimately granted summary judgment for

injunctive relief for Yorkshire. At the same time, the court denied Sweasy's motion. This appeal follows.

■ The first issue we must address is to what extent the courts should intervene in a challenge by a homeowner to an association board's actions and decisions. While there is little Illinois law available on this point, that which is present is applicable when viewed in the light of recent observations. One author pointed out that some courts have reviewed the actions of condominium associations and have applied either the strict constitutional approach applicable to government action, a similar but more equity-based rule of reasonableness, or the "business judgment" rule using an analogy to corporations. (Note, *Judicial Review of Condominium Rulemaking*, 94 Harv. L. Rev. 647 (1981).) The conclusion was that the "business judgment" rule was more appropriate for condominium associations. 94 Harv. L. Rev. at 666.

In Illinois, the cases of *Wolinsky v. Kadison* (1983), 114 Ill. App. 3d 527, 449 N.E.2d 151, and *Amoco Realty Co. v. Montalbano* (1985), 133 Ill. App. 3d 327, 478 N.E.2d 860, suggest that either a test of reasonableness (*Wolinsky*) or the "business judgment" rule (*Amoco*) be employed. The facts of *Amoco* have some similarities with the present case.

In *Amoco*, the association sued to ˙enforce restrictions when a homeowner erected some light poles. The homeowner defended by claiming that the lack of definition of a relevant term should be decided against the board. The *Amoco* court held that the provisions of the restrictions should be construed to give effect to the actual intent of the restrictions. The court upheld the board's decision on the grounds that the association's board properly exercised its judgment in interpreting the restrictive covenants. *Amoco*, 133 Ill. App. 3d 327, 478 N.E.2d 860.

On the basis of the available Illinois case law, we hold that Yorkshire is entitled to the authority to reasonably interpret its own declarations and restrictions. As such, we will examine the merits of this case with that as a cornerstone.

■ On the merits, we first examine whether the flower boxes are structures under Yorkshire's restrictions. If they are, then they fall within an area subject to regulation and this matter was properly before the trial court. Sweasy contends that the proper definition of the word "structure" in this context can be obtained by the use of the doctrine of *ejusdem generis* much in the same way that the doctrine was used in defining the term "other structure" under the terms of the Structural Work Act (Ill. Rev. Stat. 1985, ch. 48, par. 60 *et seq.*).

While we find the doctrine to be useful, we do not reach the same conclusion as Sweasy.

The doctrine of *ejusdem generis* has been defined as follows:

"[W]here a statute or document specifically enumerates several classes of persons or things and immediately following, and classed with such enumeration, the clause embraces 'other' persons or things, the word 'other' will generally be read as 'other such like,' so that the persons or things therein comprised may be read as *ejusdem generis* 'with,' and not of a quality superior to or different from, those specifically enumerated." (*Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 436, 328 N.E.2d 318, 320.)

While the doctrine is not limited to construction of statutes (*Brink's Inc. v. Illinois Commerce Comm'n* (1982), 108 Ill. App. 3d 186, 439 N.E.2d 1), the doctrine only pertains to terms contained in the same statutory scheme or document. This simply means that the term "structure" as defined in the Structural Work Act can not be used to define the same term within the limits of the condominium declarations. To do so would require a finding that the two documents carry the same intent or objective. Such is not the case.

■■ The objective of the Structural Work Act is to "provide protection to workmen engaged in extra hazardous work" (*Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 448, 236 N.E.2d 724) and to "provide workmen in extrahazardous occupations with a safe place to work" (*Bruen v. Burton Auto Spring Corp.* (1970), 130 Ill. App. 2d 477, 480, 266 N.E.2d 176). The purpose of restrictive covenants for condominiums and subdivisions is designed solely to promote a certain stability in appearance, quality of environment, and a certain amount of architectural uniformity. Therefore, without having to discuss all of the objects that either have or have not been deemed "structures" under the Structural Work Act, we hold that the definition of "structure" as used in the Act, while possibly applicable in certain instances, is not definitive in the context of Yorkshire's restrictions.

■■ In this case, the general term "other structure" has followed the more specific terms such as building, fence, wall, or additions or alterations thereto. The gist of the association's intent of what it wishes to control deals with the type of things which would contribute to or constitute substantial architectural features on or about a residence. These architectural features are, in turn, those which affect the useability and appearance of the property. They are the features that comprise the uniformity and harmony in appearance that have been associated with a condominium or townhouse development.

Therefore, the only conclusion can be that Sweasy's planters, in this case, do come within the definition of structure as used in the association's declarations and restrictions.

■ Further, without having to utilize *ejusdem generis* to define the term "structure," other rules of construction provide the same conclusion. One of the basic rules of construction is that the language must be given its plain and ordinary meaning. (*Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 381 N.E.2d 222.) In construing language, the object of the provision must be borne in mind, and language susceptible of more than one construction should receive that which will effect its purpose rather than defeat it. (*Kloss v. Suburban Cook County Tuberculosis Sanitarium District* (1949), 404 Ill. 87, 88 N.E.2d 89.) In this case, the rule requires that we give the word "structure" its plain and ordinary meaning. Black's Law Dictionary defines "structure" as:

> "Any construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner. That which is built or constructed; ***.
>
> A combination of materials to form a construction for occupancy, use or ornamentation whether installed on, above, or below the surface of a parcel of land." (Black's Law Dictionary 1276 (5th ed. 1979).)

In light of this definition, there is no question that Sweasy's planters fall under Yorkshire's right of approval prior to being constructed and installed. Therefore, the circuit court was correct in determining that Sweasy's planters were structures.

The next issue we address relates to Sweasy's affirmative defenses. Sweasy contends that the trial court erred in striking his affirmative defenses relating to prior arbitrary enforcement and the overbreadth of the restrictions. The facts in the record which formed the basis for these affirmative defenses also permit us to discuss the one affirmative defense left intact by the trial court, estoppel. All the affirmative defenses were based on essentially the same fact, *i.e.*, that other planters were permitted to be erected without prior approval. Sweasy's conclusion, then, is that prior enforcement has been arbitrary, there have been no standards in enforcement of the restrictions, and, therefore, Yorkshire must be estopped from asserting its right of approval in this case.

Sweasy contends that other planters and flower boxes have been allowed to exist absent board approval. The first class of these are various "unattached" planters and flower pots throughout the development. These would not be thought of as "structures" under any

common definition of the word. They are easily movable by any one person and are not attached to any other part of the townhouse complex. Therefore, they cannot be used as an example of prior construction without approval and any reliance by Sweasy on Yorkshire's lack of regulation of these small moveable pots would clearly be unreasonable.

The other objects upon which Sweasy based his reliance are three window flower boxes on the courtyard side of the complex. However, an affidavit submitted by Yorkshire's president states that the courtyard side of the complex, that not facing the street, has never been regulated by the association. The only instance of "courtyard side" regulation submitted was that Sweasy once submitted plans to build a chimney on the courtyard side of his unit and such plans were approved. However, due to the nature of construction inherent in a chimney, we find that one instance inapplicable to this situation.

■ On this basis, although the trial court struck these other two affirmative defenses, they were adequately considered in ruling on the affirmative defense of estoppel and, if anything, were merely repetitive in substance if not in form.

■ ■ The next issue raised is whether the trial court was correct in granting Yorkshire's motion for summary judgment. Summary judgment is a procedure which is encouraged in the proper case to avoid the unnecessary time and expense of trial and congestion of trial calendars. (*Lopez v. Winchell's Donut House* (1984), 126 Ill. App. 3d 46, 466 N.E.2d 1309.) The appellate court may consider the entire record in review of a summary judgment order and is not bound by the trial court's reasoning. (*Lindgren v. First National Bank* (1985), 130 Ill. App. 3d 371, 474 N.E.2d 427.) If, after considering the entire record, and viewing the evidence strictly against the moving party, no genuine issue of triable fact exists, the movant's right is clear and the court should grant his motion for summary judgment. (See *Schwaner v. Belvidere Medical Building Partnership* (1987), 155 Ill. App. 3d 976, 508 N.E.2d 1034.) In this case, the court was correct in granting Yorkshire's motion for summary judgment.

In his petition for summary judgment, Sweasy stated:

> "That in the event the Court ultimately determines that Defendant's planters are in fact structures and not personal property, then Defendant would concede that his planters are governed by Article VII and Article VIII, Section 2 of the Declarations and would therefore voluntarily remove his planters without the requirement of any enforcement action on the part of the Plaintiff."

The only possible issues raised on the pleadings were whether Sweasy's planters were structures and whether Yorkshire was estopped from asserting noncompliance with its declarations. Both those issues being resolved in favor of Yorkshire, the court was correct in entering its order for summary judgment in favor of Yorkshire.

The final issue is whether the court was correct in denying Yorkshire's request for attorney fees. The general rule in Illinois is that a prevailing party in litigation is not entitled to recover legal expenses including attorney fees; the two exceptions to this rule are an applicable statute, or an agreement of the parties. (*Saltiel v. Olsen* (1981), 85 Ill. 2d 484, 426 N.E.2d 1204.) Under Yorkshire's declarations and restrictions, article XI provides:

> "[T]he Association *** shall have the right to enforce these covenants and restrictions by any proceeding at law or in equity, against any person or persons violating or attempting to violate any covenant or restriction, to restrain violation ***. *The expense of enforcement by the Association shall be chargeable to the Owner of the Lot violating these covenants and restrictions ***.*" (Emphasis added.)

Condominium declarations and bylaws are covenants running with the land and binding on subsequent purchasers. (*St. Paul Federal Bank For Savings v. Wesby* (1986), 149 Ill. App. 3d 1059, 501 N.E.2d 707.) The same is true of a covenant to pay attorney fees for the enforcement of other covenants. (*Streams Sports Club, Ltd. v. Richmond* (1983), 99 Ill. 2d 182, 457 N.E.2d 1126.) By purchasing his land subject to the recorded restrictions, Sweasy agreed to be bound by those restrictions. Accordingly, the circuit court erred in denying Yorkshire its reasonable costs of litigation and this case will be remanded on this issue for a determination of those fees.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed in part and reversed and remanded in part.

Affirmed in part; reversed and remanded in part.

SCOTT and WOMBACHER, JJ., concur.