2021 IL App (1st) 200906-U

No. 1-20-0906

Order filed December 30, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| 2424 CHICAGO CONDOMINIUM ASSOCIATION, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CH 4817 |
| | ) | |
| REVITE CORPORATION, | ) | Honorable |
| | ) | Franklin U. Valderrama, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*: The condominium association was entitled to summary judgment on its claim for declaratory and injunctive relief where the owner of the ground floor commercial units built a fence without seeking or obtaining the prior approval of the condominium board.

¶ 2    The plaintiff condominium association moved for summary judgment on its claim for injunctive and declaratory relief, which alleged that the defendant owner of the ground floor commercial units of the condominium building constructed a fence without seeking or obtaining

the prior approval of the condominium board, in violation of the condominium's declaration. The defendant filed a cross-motion for summary judgment. The trial court granted plaintiff's summary judgment motion and denied defendant's cross-motion. The trial court also granted plaintiff's petition for attorney fees.

¶ 3    On appeal, defendant argues that the trial court erred by granting summary judgment to plaintiff because plaintiff was not entitled to injunctive relief since its condominium declaration did not contain a restriction prohibiting defendant from constructing the fence on the limited common element area owned by defendant. Defendant also argues that questions of material fact precluded the entry of summary judgment in favor of plaintiff. Finally, defendant argues that no basis in contract or the law supports an award of attorney fees for plaintiff.

¶ 4    For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 5                        I. BACKGROUND

¶ 6    Plaintiff 2424 Chicago Condominium Association (Association) is an eight unit, mixed-use condominium building comprised of six residential units and two ground floor commercial units. Defendant Revite Corporation (Revite) is the owner of the two ground floor commercial units, where it operates a medical practice. In October 2015, Revite began constructing a fence directly in front of the commercial units without seeking or obtaining permission from the Association. After the Association discovered the project and directed Revite to cease construction, Revite continued erecting the fence.

_____

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 7     In April 2016, the Association filed a complaint against Revite seeking injunctive and declaratory relief. The Association later amended the complaint, asserting a breach of contract claim and seeking a mandatory injunction requiring Revite to return the common elements to their original condition by removing the fence. The Association's claim for declaratory relief asserted that Revite violated the condominium declaration and that the Association had the authority to abate or remove any condition that violated the terms of the declaration.

¶ 8     Revite moved to dismiss the complaint under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2016)), primarily arguing that the Association failed to properly approve the filing of the lawsuit at an open meeting of its board of directors. Following briefing and oral argument, the trial court in January 2017 denied Revite's motion to dismiss, finding that issues of fact precluded dismissal of the case and necessitated discovery.

¶ 9     In March 2017, Revite filed its answer and affirmative defenses, which asserted that (1) the fence either was not constructed on the Association's limited common elements, or was constructed on the limited common elements with the permission of the developer, or was constructed on the limited common elements and was necessary for Revite's safety; (2) the Association never properly retained a law firm to file the lawsuit; (3) the Association's rules and regulations were void; and (4) the Association never properly approved the filing of the lawsuit. The Association generally denied the legal sufficiency of Revite's affirmative defenses.

¶ 10    After the completion of discovery and an unsuccessful attempt to mediate a resolution, the parties filed cross-motions for summary judgment.

¶ 11    The Association's summary judgment motion argued that (1) Revite constructed the fence without requesting or obtaining the Association's permission and continued constructing the fence after the Association demanded that Revite stop, (2) the evidence showed that the Association voted on and approved the filing of a lawsuit at an open meeting, which was corroborated by Revite's own transcript of that meeting, (3) the fence project was subject to the declaration's approval requirements because Revite previously conceded that the fence was built on the limited common elements, (4) Revite's "safety" pretext was irrelevant and the trial court need not balance the equities because Revite constructed the fence despite knowing that doing so without the Association's permission violated the declaration, (5) any purported permission from the developer to build the fence was also irrelevant because the fence was built after the developer turned the condominium property over to the unit owners, and (6) the Association was entitled to an award of attorney fees pursuant to the clear and unambiguous authority of its declaration and section 9.2(b) of the Condominium Property Act (Act) (765 ILCS 605/9.2(b) (West 2016)), which provided for an award of attorney fees to the prevailing party in litigation filed to enforce the declaration.

¶ 12    In its motion, Revite contended that it was entitled to summary judgment because the fence protected its property, was approved by the developer, did not violate any prohibition against fences in the declaration, and was consistent with fences at other properties in the same neighborhood.

¶ 13    In response, the Association argued that Revite's motion contained an argument wherein Revite admitted that the fence was built on the limited common elements. The Association asserted

that this admission by Revite compelled the court to conclude that Revite violated the declaration when it installed the fence and that such a violation could be properly addressed by the issuance of an injunction.

¶ 14    On May 31, 2018, the trial court granted the Association's motion for summary judgment and denied Revite's motion for summary judgment. The court found that Revite was required to obtain consent prior to constructing the fence and failed to obtain that authorization. The court also ruled that the Association was entitled to an award of attorney fees and granted the Association leave to file an attorney fees petition.

¶ 15    After the Association filed its petition for attorney fees, Revite moved the court to reconsider its May 2018 decision. Revite argued the court's order was based on an erroneous reading of the condominium declaration and an erroneous application of law. Specifically, Revite argued that (1) the Association's authority over Revite's use and occupancy of its commercial units was limited to the restrictions specifically identified in article IX, section (b) of the declaration, and none of those listed restrictions prohibited the installation of a fence on Revite's property, (2) the emails Revite submitted to the court showed that Revite believed it had the developer's permission to install the fence, (3) the declaration intended to draw a specific distinction between commercial and residential units, and the definition of "Limited Common Elements" did not include the commercial units, (4) the necessity of the fence for security purposes was a genuine issue of material fact that precluded summary judgment, (5) the declaration did not provide the Association with the basis for an injunction, and (6) no statutory or contractual basis provided for an award of attorney fees to the Association.

¶ 16    In its response, the Association stated that its summary judgment motion was predicated on the provisions of the declaration in article III, section (3)(a); article IX, section (j); and article XI. The Association contended that those provisions, when read together, required Revite to obtain the Association's approval before modifying the common elements (of which the limited common elements, including the fence, were a subpart) and authorized the Association to seek injunctive relief to abate a violation of the declaration. The Association also stated, *inter alia*, that Revite (1) forfeited by raising for the first time the arguments that the fence was not built on the common elements and that Revite's units did not meet the definition of "Unit" under the declaration, (2) had already conceded that it constructed the fence on a limited common element, and (3) submitted no evidence to rebut the developer's affidavit and deposition testimony that denied giving Revite permission to construct the fence. Finally, the Association stated that it was entitled to an award of its attorney fees under article XI of the declaration and section 9.2(b) of the Act.

¶ 17    On November 27, 2018, the trial court denied Revite's motion for reconsideration. The court stated, *inter alia*, that the fence was constructed on the common elements, the declaration expressly provided that any construction on the common elements must be authorized by the condominium board's prior consent, and Revite did not have either the Association's or the developer's permission to construct the fence. The court also stated that Revite forfeited its argument about its commercial units not meeting the definition of "Unit" in the declaration and that Revite's argument concerning the necessity of the security fence was irrelevant.

¶ 18    The trial court stayed enforcement of the summary judgment order while the Association's petition for attorney fees was being adjudicated. On July 23, 2019, the trial court conducted an

evidentiary hearing on the Association's attorney fee petition, which hearing consisted of live testimony from the Association's counsel in support of the attorney fee award. The record does not include a transcript of that hearing.

¶ 19    On July 29, 2020, the trial court issued a seven-page written order that awarded the Association $43,621.68 in attorney fees but denied the Association's request for reimbursement of court costs.

¶ 20    On August 11, 2020, the trial court granted Revite's motion to stay enforcement of the trial court's orders of May 31, 2018, November 27, 2018, and July 29, 2020, pending appeal. Revite timely filed its notice of appeal and posted an appeal bond.

¶ 21                                    II. ANALYSIS

¶ 22    Summary judgment is proper when the pleadings, depositions, admissions, and affidavits, construed strictly against the movant and liberally in favor of the nonmovant, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018); *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). The purpose of summary judgment is not to try a question of fact, but to determine whether a genuine issue of material fact exists. *Illinois State Bar Ass'n Mutual Insurance Co. v. Law Office of Tuzzolino & Terpinas*, 2015 IL 117096, ¶ 14. Summary judgment is a drastic measure and should be granted only when the movant's right to judgment is clear and free from doubt. *Adams*, 211 Ill. 2d at 42-43. Where a reasonable person could draw divergent inferences from the undisputed facts, summary judgment should be denied. *Id.*

¶ 23    A party moving for summary judgment may prevail by either (1) affirmatively disproving the nonmovant's case by introducing evidence that, if uncontroverted, would entitle the movant to judgment as a matter of law; or (2) establishing that the nonmovant lacks sufficient evidence to prove an essential element of the nonmovant's cause of action. *Carolan v. City of Chicago*, 2018 IL App (1st) 170205, ¶ 11. Once the movant satisfies the initial burden of production, the burden then shifts to the nonmovant to present a competent factual basis that would arguably entitle the nonmovant to a judgment under the applicable law. *Argueta v. Krivickas*, 2011 IL App (1st) 102166, ¶ 6. The nonmovant cannot rest on his pleading if the movant has supplied uncontradicted facts that would warrant judgment for the movant. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 257 (2004); *Valfer v. Evanston Northwestern Healthcare*, 2016 IL 119220, ¶ 20.

¶ 24    In opposing a summary judgment motion, the nonmovant must present facts, not unsupported conclusions, speculation, conjecture, guess, or opinions, which are all insufficient to withstand summary judgment. *In re Estate of Crawford*, 2019 IL App (1st) 182703, ¶ 39. The facts presented by the nonmovant in opposition to a motion for summary judgment must be competent facts under the applicable law. *Wiszowaty v. Baumgard*, 257 Ill. App. 3d 812, 819 (1994). Any evidence that would be inadmissible at trial cannot be considered in a summary judgment proceeding. *Watkins v. Schmitt*, 172 Ill. 2d 193, 203-04 (1996); *Zamora v. Lewis*, 2019 IL App (1st) 181642, ¶ 67.

¶ 25    Where, as here, the parties have filed cross-motions for summary judgment, they have conceded that there are no genuine issues of material fact and have agreed that only questions of law are involved. *Nationwide Financial, LP v. Pobuda*, 2014 IL 116717, ¶ 24. In such a situation,

the parties request that the court decide the issues as a matter of law. *Id.* However, the mere filing of cross-motions does not preclude a determination that triable questions of material fact exist. *Andrews v. Cramer*, 256 Ill. App. 3d 766, 769 (1993). Partial summary judgment may be granted whenever there is no material factual dispute as to any major issue in a case, even if substantial controversy exists with respect to other issues. *Gleicher, Friberg & Associates, M.D., S.C. v. University of Health Sciences, Chicago Medical School*, 224 Ill. App. 3d 77, 87 (1991). We review *de novo* the trial court's judgment on cross-motions for summary judgment. *Pobuda*, 2014 IL 116717, ¶ 24; see also *Thomas v. Weatherguard Construction Co.*, 2015 IL App (1st) 142785, ¶ 63 (under *de novo* review, the reviewing court performs the same analysis the trial court would perform).

¶ 26                                    A. Right to Injunctive Relief

¶ 27      Revite argues the Association was not entitled to summary judgment because it could not establish its right to a mandatory injunction requiring the removal of the fence since the condominium declaration did not contain a reasonable, clear and definite restrictive covenant prohibiting a fence on the limited common elements area owned by Revite. The fence is located directly behind the city's sidewalk and in front of the two ground floor commercial units owned by Revite. Revite contends that neither the declaration nor the plats of survey of the property describing the two ground floor commercial units indicated that area was a common element or a limited common element. According to Revite, the area where the fence is located is either part of the commercial unit itself or a limited common element. Moreover, under either scenario,

the Association has no right to refuse Revite permission "to construct a fence for security and safety reasons just as other commercial entities in the neighborhood have done."

¶ 28    Revite argues the trial court ignored the difference between the terms "limited common elements" and "common elements" under the Act, the declaration and Illinois case law. According to Revite, the fence is a permissible encroachment within the common elements classification. Revite also contends the trial court ignored the significant difference made in the declaration between the terms "commercial unit" and "residential unit." Revite argues that when those terms are properly interpreted, the Association has no right under either the Act or the declaration or Illinois case law to bar the fence or require Revite to remove the fence.

¶ 29    The Act regulates the creation and operation of Illinois condominium associations. *Board of Managers of Weathersfield Condominium Ass'n v. Schaumburg Ltd. Partnership,* 307 Ill. App. 3d 614, 619 (1999). The Act provides a condominium association's board of directors with broad authority to manage and administer condominium property. *Schaffner v. 514 W. Grant Place Condominium Ass'n*, 324 Ill. App. 3d 1033, 1042-1043 (2001). The Act "is designed to encourage associations to be self-governing," and the members "are in the best position to make determinations regarding restrictions." *Apple II Condominium Ass'n v. Worth Bank and Trust Co.*, 277 Ill. App. 3d 345, 350 (1995). Although a condominium association is not free to ignore the express language of its declaration, it does have the authority to interpret the covenants, conditions and restrictions in its declaration. *Neufairfield Homeowners Ass'n v. Wagner*, 2015 IL App (3d) 140775, ¶ 19.

¶ 30    "To resolve controversies involving a condominium owner's rights, courts must construe the declaration, bylaws and any relevant provisions of the Act as a whole. [Citation.]" *Stobe v. 842-848 W. Bradley Place Condominium Ass'n*, 2016 IL App (1st) 141427, ¶ 13. The declaration is a contract between Revite and the Association that governs how Revite is to use its commercial units as well as those portions of the property that are defined as common elements and limited common elements. See *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2014 IL App (1st) 111290, ¶ 75. In assessing Revite's argument, we necessarily must interpret this contract. The primary goal of contract interpretation is to give effect to the intent of the parties, as shown by the language in the contract. *Lease Management Equipment Corp. v. DFO Partnership*, 392 Ill. App 678, 685 (2009). In determining the intent of the parties, a court must consider the document as a whole and not focus on isolated portions of the document. *Premier Title Co. v. Donahue*, 328 Ill. App. 3d 161, 164 (2002). The language of the contract should be given its plain and ordinary meaning and the contract enforced as written. *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). The interpretation of a contract is a question of law and may, therefore, be decided on a motion for summary judgment. *Premier Title Co.*, 328 Ill. App. 3d at 164.

¶ 31    By purchasing land subject to recorded restrictions, a property owner agrees to be bound by those restrictions. *Yorkshire Village Community Ass'n v. Sweasy*, 170 Ill. App. 3d 155, 163 (1988); see also *Siena at Old Orchard Condominium Ass'n v. Siena at Old Orchard, L.L.C.*, 2018 IL App (1st) 182133, ¶ 21 ("[c]ondominium declarations are covenants running with the land," and "a covenant is a contract"). Generally, restrictive covenants affecting land rights will

be enforced according to their plain and unambiguous language. *Levitt Homes Inc. v. Old Farm Homeowner's Ass'n*, 111 Ill. App. 3d 300, 308 (1982). The proper interpretation of a covenant is a question of law, and the covenant is to be construed so as to give effect to the actual intent of the parties when the covenant was made. *Cimino v. Dill*, 92 Ill. App. 3d 345, 348 (1980). Covenants should be strictly construed so that they do not extend beyond that which is expressly stipulated; all doubts must be resolved in favor of the free use of property and against restrictions. *Fairways of Country Lakes Townhouse Ass'n v. Shenandoah Development Corp.*, 113 Ill. App. 3d 932, 935 (1983). Even though the covenant is strictly construed in favor of free use of property, this rule may not defeat the obvious purpose of the restrictions or the clear intent of the parties, if not precisely expressed. *Freehling v. Development Management Group*, 75 Ill. App. 3d 243, 248 (1979). In the absence of a definition within the covenant, words used in the declaration should be given their ordinary and commonly understood meanings (*Forest Glen Community Homeowners Ass'n v. Nolan*, 104 Ill. App. 3d 108, 112 (1982)), and the dictionary can be used as a resource to determine the ordinary and popular meaning of a word (*Bailey v. Illinois Liquor Control Commission*, 405 Ill. App. 3d 550, 555 (2010)). The extraordinary remedy of injunction shall not issue to enforce a covenant that is indefinite and uncertain. *Cleveland v. Martin*, 218 Ill. 73, 90 (1905); *Freehling*, 75 Ill. App. 3d at 246.

¶ 32    Revite equivocates on whether it built the fence on the limited common elements appurtenant to its commercial units. For example, Revite stated in its summary judgment motion that the "fence was erected on a limited common element appurtenant to Revite's commercial units." Revite also attached an email to its summary judgment motion wherein one of its principals

strenuously argued to the Association that the fence was built on the limited common elements. In addition, Revite stated in its response to the Association's summary judgment motion that "Revite installed a fence on the limited common element appurtenant to Revite's Units," which Revite referred to as a terrace, and terraces are defined as limited common elements pursuant to article III, section (2)(a) of the declaration. Finally, Revite's attorney conceded at a hearing on Revite's motion to stay enforcement of the summary judgment order that the fence was built on the limited common elements. However, Revite argues on appeal that a question of material fact exists regarding whether the location of the fence is a common element, a limited common element, or a part of Revite's commercial units.

¶ 33   Even if Revite did not concede before the trial court that the area where the fence was built is classified as a limited common element, the plain language of the declaration establishes that Revite built the fence on the limited common elements. Article I, section (l) of the declaration defines the term "Limited Common Elements" as:

> "That part of the Common Elements serving a single Unit exclusively as an inseparable appurtenance thereto, including specifically such portions of the perimeter walls, floors and ceilings, windows and doors, balconies and all fixtures and structures therein that lie outside the Unit boundaries, pipes, ducts, flues, shafts, electrical wiring or conduits, or other system or component part thereof that serve a Unit exclusively to the extent such system or component part is located outside the boundaries of a Unit."

Because the area where Revite built the fence exclusively served Revite's commercial units, such area was properly deemed a limited common element. See also 765 ILCS 605/2(s) (West 2018)

(defining the limited common elements in relevant part as "a portion of the common elements so designated in the declaration as being reserved for the use of a certain unit or units to the exclusion of other units").

¶ 34    Article III, section 2(a) of the declaration states:

> "2(a). <u>Limited Common Elements</u>. The Limited Common Elements shall consist of a portion of the Common Elements so designated in the Declaration or on the Plat as being reserved for the use of a certain Unit or Units to the exclusion of other Units. Any portion of the Common Elements which by the terms of this Declaration or by its nature or location is clearly intended to serve exclusively a certain Unit or Units (but less than all of the Units) or the Unit Owner or Unit Owners thereof *** as may serve exclusively a single Unit or group of Units shall be deemed a Limited Common Element. *** The Limited Common Elements shall include, but shall not be limited to, the following: *** (c) any system or component part thereof (including without limitation, air conditioning unit sleeves, furnaces, heat pumps, fittings[,] housings, ducts, flues, shafts, electrical wiring and conduits) which serves a Unit exclusively, to the extent that such system or component part is located outside the boundaries of a Unit; (d) the Balconies/Terraces (if any); (e) yard space; and (f) roof decks."

Portions of condominium property such as a terrace, corridor or an outside walkway that are located beyond the perimeter walls of Revite's commercial units, but exclusively serve its units, are deemed to be Limited Common Elements. It is unrefuted that the fence was built outside the four corners of Revite's commercial units and in an area between the city's sidewalk and the front

walls of the condominium building. Revite itself referred to that area as a terrace. Accordingly, the plain and unambiguous language of the declaration, coupled with the unrefuted facts, establish that the fence was built on limited common elements.

¶ 35    Revite asserts that, because the plats for the property do not expressly label the area where it constructed the fence as limited common elements, the area is part of Revite's commercial units. Contrary to Revite's assertion, the declaration, as discussed above, clearly defines the area where the fence was built as part of the limited common elements. Moreover, if an inconsistency existed between the plats and the declaration, the declaration supersedes any inconsistency created by the plats. See 765 ILCS 605/4.1(b) (West 2018) ("in the event of a conflict between the provisions of the declaration and the bylaws or other condominium instruments, the declaration prevails except to the extent the declaration is inconsistent with this Act"). The area where the fence is built is simply unmarked on the plats and, as a result, there is no conflict and the language in the declaration controls. In fact, Article III, section 2(a) of the declaration states that the limited common elements are those portions of "the Common Elements so designated in the Declaration or on the Plat." The plat is not the only pertinent authority regarding how the condominium property is classified; a portion of property can be designated as a limited common element by *either* the declaration *or* the plats. Accordingly, because the declaration defines the area where the fence was built as part of the limited common elements (and the plat is silent in defining that same portion of property), that area is part of the limited common elements.

¶ 36 The fence is built on the limited common elements and any portion of the property that is a limited common element is part of the common elements. Article I, section (g) of the declaration defines the term "Common Elements" as:

"All portions of the Property except the Units, including, without limiting the generality of the foregoing, the Parcel, all Limited Common Elements, stairways, corridors, roofs, storage areas, laundries, mechanical rooms and equipment therein, refuse collection system, central heating system, and structural parts of the improvements on the Parcel, wherever located."

See also 765 ILCS 605/2(e), 2(s) (West 2018) (stating that limited common elements are part of the common elements). Furthermore, article IX, section (j) of the declaration provides:

"j. Nothing shall be altered or constructed in or removed from the Common Elements except as constructed or altered by or with the permission of the Developer at any time before the first annual meeting of the Unit Owners without the written consent of the Association."

Accordingly, Revite was required under article IX, section (j) of the declaration to obtain the Association's permission before building the fence.

¶ 37 Revite, however, suggests that the Association lacks the authority to determine what type of modifications or alterations of the common elements are aesthetically appropriate. We disagree. According to the record, a board member of the Association testified during her deposition regarding the concerns the Association had about the appearance of the fence. Specifically, she testified that Revite's fence, which has fleur-de-lis points and is not coordinated with the building's

existing fence, does not match the aesthetic of the building, which is ultramodern contemporary. Article III, section 3(a) of the declaration states:

> "[t]he use of the Common Elements and the right of the Unit Owners with respect thereto shall be subject to and governed by the Act, the Condominium Instruments and the rules and regulations of the Board."

The declaration makes clear that the use of the common elements (which includes the limited common elements) is subject to the regulation of the Board. Moreover, the preamble to the declaration references the Association's authority to protect the aesthetics of the condominium property, stating:

> "WHEREAS, the Owner desires and intends that the several Unit Owners, mortgagees, occupants, and other persons hereafter acquiring any interest in the Property shall at all times enjoy the benefits of and shall hold their interests subject to the rights, easements, privileges, and restrictions hereinafter set forth, all of which are declared to be in furtherance of a plan to promote and protect the cooperative aspect of the Property and are established for the purpose of enhancing and perfecting the value, desirability, and attractiveness of the Property."

Reading article IX, section (j), which requires the Association's permission before anything can be altered or constructed in or removed from the common elements, in the context of the declaration as a whole, it is clear that the Association has the authority to protect the appearance and aesthetics of the condominium building because the Association has the authority to approve

or disapprove modifications, alterations, or construction on the common elements since those projects impact, *inter alia*, the appearance of the condominium building.

¶ 38    While restrictive covenants are to be strictly construed and will be enforced only if they are reasonable, clear and definite, a covenant restricting the use of property for residential purposes is valid and will be enforced where the intent of the drafter to impose the restriction is clearly manifested. *400 Condominium Ass'n v. Gedo*, 183 Ill. App. 3d 582, 584 (1989). Strict construction should not be used to destroy the restriction's purpose or to defeat the obvious intention of the parties, even though it is not precisely expressed. *Id*. Ultimately, the Association's ability to maintain aesthetic uniformity and appeal is established by article IX, section (j) of the declaration, particularly when reading the declaration in its entirety.

¶ 39    Revite contends, without citation to any relevant authority, that its safety concerns about crime and the presence of homeless people near the condominium property allow Revite to circumvent requirements in the declaration and modify the common elements by building a fence without the board's permission.

¶ 40    Revite's contention, however, is refuted by article IX, section (j) of the declaration, which, as set forth above, provides that nothing can be altered or constructed in or removed from the common elements without the Association's written consent except as constructed or altered by or with the permission of the developer before the first annual meeting of the unit owners. There is no dispute that control of the condominium property had been turned over to the unit owners well before the time Revite built the fence. Furthermore, Revite presented no evidence that the developer consented to the fence that Revite built. To the contrary, the deposition testimony of the

developer's representative showed that Revite asked the developer as it was finishing its work for the building if a fence for Revite's commercial units could be built, and the developer told Revite more than once that Revite would have to ask the board for permission to construct a fence. Moreover, the developer's representative explicitly denied giving Revite permission to construct the fence when the developer controlled the property before it was turned over to the unit owners.

¶ 41    Revite argues that it is subject only to those use restrictions contained in article IX, section (b) of the declaration, which lists several restrictions applicable to the commercial units. We disagree. The first sentence of article IX states that the article's restrictions apply to the "Use and Occupancy of Units and Common Elements," without exception. Article IX contains provisions that dictate how every owner is to use the units and common elements. There is no rational basis to construe the declaration in a manner that exempts Revite from all the use restrictions in article IX except those that appear in section (b). The declaration simply does not say that Revite is only subject to section (b).

¶ 42    Moreover, exempting Revite from all the use restrictions other than those in section (b) would lead to absurd results because then Revite would not be subject to rules such as those that prevent owners from overloading electrical wiring, compel them to pay for damage they cause to other units, require them to keep units in good condition and repair, and prevent them from raising poultry or livestock or performing work that impairs the structural integrity of the building. See *Board of Education v. Orbach*, 2013 IL App (2d) 120504, ¶ 19 (a contract should be construed to avoid absurd results). Article IX, section (b) of the declaration is clearly intended to provide carve-outs to restrictions that would otherwise interfere with a commercial unit owner's ability to

use the commercial units for ordinary commercial purposes and prevent the commercial unit owner from operating certain types of businesses, like a bar or nightclub, or a business that poses a danger to Association residents. Furthermore, if Revite was exempt from all the use restrictions in article IX except those that appear in section (b), then two separate classes of ownership would be created in violation of section 18(b)(2) of the Act, which provides that "the association shall have one class of membership." 765 ILCS 605/18(b)(2) (West 2018).

¶ 43     Revite also argues that it is not subject to some or all of the declaration's restrictions based on the definition of the term "Units" in the declaration. Revite, however, has forfeited this argument by raising it for the first time in its motion to reconsider. See *Illinois Health Maintenance Organization Guaranty Association v. Shapo*, 357 Ill. App. 3d 122, 137 (2005) (one may not raise a legal theory for the first time in a motion to reconsider); *Holzer v. Motorola Lighting, Inc.*, 295 Ill. App. 3d 963, 978 (1998) (a party may not raise a legal theory for the first time in a motion to reconsider or on appeal).

¶ 44     Forfeiture aside, the declaration as a whole clearly establishes that the commercial units are "Units" that are subject to the restrictions contained in article IX of the declaration. For example, article IX, section (a) of the declaration provides that "[n]o Unit shall be used for other than housing, except for the Commercial Units (101 and 102) and the related common purposes for which the Property was designated." The commercial units are "Units" under the declaration; otherwise, the language in article IX, section (a) would be superfluous.

¶ 45     Furthermore, both exhibit A (the legal description of units) and exhibit B (the percentage of ownership interest in the common elements) to the declaration refer to the commercial units 101

and 102 as units. Article III, section 3(b) of the declaration states that "[e]ach Unit Owner shall own an undivided interest in the Common Elements, in the percentage set forth in Exhibit B attached hereto and made part herein, as a tenant in common with all other Unit Owners." A unit owner is the owner of a unit who is allocated an ownership interest in the common elements. Revite has been allocated an ownership interest in the common elements (as exemplified by exhibit B to the declaration) and, thus, Revite is a unit owner and its commercial units are "Units."

¶ 46   Treating Revite's commercial units as "Units" is also consistent with the definition of that term under the Act. Under the Act, "Unit" means a part of the property designed and intended for any type of independent use. 765 ILCS 605/2(d) (West 2018). Revite's commercial units are clearly "Units" under the Act. To the extent the declaration's definition of a "Unit" is inconsistent with the Act, the Act controls. Section 2.1 of the Act states that "[u]nless otherwise expressly provided in another Section, the provisions of this Act are applicable to all condominiums in this State. Any provisions of a condominium instrument that contains provisions inconsistent with the provisions of this Act are void as against public policy and ineffective." 765 ILCS 605/2.1 (West 2018). For all these reasons, the trial court properly considered Revite's commercial units as "Units" that are subject to the declaration's restrictions.

¶ 47   Revite also contends that the Association should not have been awarded mandatory injunctive relief. The declaration, however, contemplates that equitable relief is appropriate to address a violation of the declaration. Article XI of the declaration states:

"The violation of any rule or regulation adopted by the Association or the breach of any covenant or provision herein or in the Bylaws contained shall, in addition to any

other rights provided for in this Declaration or the Bylaws, give the Association the right (a) to enter on the Unit or any portion of the Property on which, or as to which, such violation or breach exists and to summarily abate and remove, at the expense of the defaulting Unit Owner, any structure, thing, or condition that may exist thereon contrary to the intent and meaning of the provisions hereof, and neither the Association nor the officers, employees, or agents thereof shall thereby be deemed guilty in any manner of trespass; or (b) to enjoin, abate, or remedy by appropriate legal proceedings, either by law or in equity, the continuance of any breach; ***."

The declaration provides the Association with a specific set of remedies in the event of a breach by one of its members, which includes the right to abate or remove any condition that violates the declaration as well as the right to enjoin or abate a violation through legal proceedings.

¶ 48    Precedent also supports the issuance of injunctive relief to address the breach of a restrictive covenant, like the breach at issue in this litigation. Restrictive covenants concerning the use of land are in a somewhat unique category and, unless the restriction goes against public policy or is subject to principles of waiver or estoppel, a violation will generally be enjoined by a court of equity. *Cordogan v. Union National Bank*, 64 Ill. App. 3d 248, 253 (1978); see, *e.g.*, *Forest Glen Community Homeowners Ass'n*, 104 Ill. App. 3d at 112-13 (the breach of a covenant is sufficient reason to enjoin its violation and a complainant need not show substantial comparative injury). Moreover, the party in whose favor a restrictive covenant runs is *prima facie* entitled to its enforcement since the mere breach of the covenant is sufficient grounds to enjoin its violation. *Amoco Realty Co. v. Montalbano*, 133 Ill. App. 3d 327, 332 (1985).

¶ 49    The Association does not need to show a substantial injury to justify its request for injunctive relief, particularly when the declaration states that breaches can be addressed through injunctive relief. For example, in *Yorkshire Village Community Ass'n*, a unit owner built two flower box planters. 170 Ill. App. 3d at 157-58. While in the process of constructing the planters, the unit owner was advised by the president of the community association that he was required to obtain board permission prior to constructing the planters. *Id.* The unit owner ignored the board president and moved forward with construction. *Id.* The community association then filed a lawsuit seeking injunctive relief. *Id.* The court, in examining the association's covenants, held that the association was vested with the authority to reasonably interpret its own declaration and restrictions. *Id.* at 159. The court stated that the purpose of the association's covenants (specifically its architectural controls) was to provide the association with control over modifications that impact the useability and appearance of the property and that, as a general matter, restrictive covenants for condominium and homeowners' associations are designed solely to promote a certain stability in appearance, quality of environment, and a certain amount of architectural uniformity. *Id.* at 160. As a result, the court sustained an injunction compelling the removal of the flower box planters. *Id.* at 157, 163.

¶ 50    Here, while in the process of constructing the fence, Revite was warned by a board member that it should stop because no plans for the fence were submitted to or approved by the board. Revite ignored that warning and completed construction of the fence. As in *Yorkshire Village Community Ass'n*, the purpose of the covenants at issue is to provide the Association with control over a modification that impacts the useability and the appearance of the exterior common

elements, and the Association has the right to compel the removal of a modification made in violation of the declaration.

¶ 51    In *Saddle Hill Community Ass'n v. Cavallari*, a unit owner constructed a fence without first submitting plans and obtaining the permission of the association's board of directors. 150 Ill. App. 3d 134, 135 (1986). The declaration stated that "[n]o building, fence, wall or other structure shall be commenced, erected, or maintained" until specific construction plans are submitted to and reviewed by an architectural review committee. *Id*. at 136. This court affirmed the trial court's decision to issue an injunction compelling the removal of the fence on the basis that the declaration evidenced an intention to grant a committee the power to approve or disapprove all architectural construction or alterations in the community. *Id*. at 136-37. Similarly here, the declaration clearly evidences an intent that the Association be granted the power to approve modifications that are made to the common elements and, like the homeowner in *Saddle Hill Community*, Revite violated this restriction when it installed the fence without permission. An injunction is an appropriate remedy to address the violation of the Association's architectural control.

¶ 52    In sum, article III, section 3(a) of the declaration states that the right of owners to use the common elements (and by extension the limited common elements) is governed by the condominium instruments. Article IX, section (j) of the declaration provides that nothing can be altered or constructed in or removed from the common elements without the written consent of the Association except as constructed or altered by or with the permission of the developer before the first annual meeting of the unit owners. Article XI of the declaration provides that the Association is authorized to enjoin, abate, or remedy by appropriate legal proceedings, either by law or in

equity, any violation of the declaration. When Revite constructed the fence on the limited common elements (*i.e.*, a subpart of the common elements), Revite was required to obtain the permission of the Association. Its failure to do so was an unequivocal breach of the declaration, to which the Association was authorized to abate through a lawsuit that seeks injunctive relief.

¶ 53     We conclude that the trial court properly entered summary judgment in the Association's favor and correctly denied Revite's request for summary judgment.

¶ 54                                 B. Questions of Material Fact

¶ 55     Revite argues that the Association was not entitled to summary judgment because genuine issues of material fact existed and could only have been resolved during trial. According to Revite, questions of material fact existed regarding (1) the location of the fence because neither the declaration nor the plats designated the area between the city sidewalk and the front windows of Revite's commercial units as a limited common element, a common element or a part of Revite's units, (2) whether the fence was an obstruction of the common elements, (3) whether security and safety issues existed and thus the medical clinic's need for safety overcame the Association's objection to the fleur-de-lis decorations of the fence, and (4) whether the developer gave Revite permission to install the fence before the developer turned the building over to the unit owners.

¶ 56     We reject Revite's argument. Our discussion above addressed each of Revite's four issues and establishes that no genuine issue of material fact exists that would preclude the entry of summary judgment in favor of the Association.

¶ 57                                C. Attorney Fees

¶ 58    Revite argues that no basis in the law or contract supported the shifting of attorney fees from the Association to Revite. Specifically, Revite argues that (1) section 9.2 of the Act (765 ILCS 605/9.2 (West 2018)) does not allow for fee shifting here because Revite did not violate the Act; (2) the Association was not entitled to attorney fees based on its declaration because the Association failed to comply with all the terms and conditions of article XI of the declaration, which required the Association to give Revite a notice of violation of the declaration followed by a disciplinary hearing with an opportunity to present evidence of any alleged violation; (3) the $43,621.68 attorney fee award to the Association was unreasonable and unsupportable because the Association failed to produce records of the daily entries counsel made into the computer regarding the time spent, the service rendered and the date on which the service was rendered; and (4) the insignificance of the issue litigated here—*i.e.*, the Association's objection to the fleur-de-lis decoration situated at the top of the vertical posts of the fence—does not justify the unreasonable amount of attorney fees awarded.

¶ 59    The Association sought an award of attorney fees pursuant to section 9.2(b) of the Act, which provides:

> "Any attorneys' fees incurred by the Association arising out of a default by any unit owner, his tenant, invitee or guest in the performance of any of the provisions of the condominium instruments, rules and regulations or any applicable statute or ordinance shall be added to, and deemed a part of, his respective share of the common expenses." 765 ILCS 605/9.2(b) (West 2018).

¶ 60    When construing a statute, the court's primary objective is to ascertain and give effect to the legislature's intent, best indicated by the plain and ordinary language of the statute. *Hernandez v. Lifeline Ambulance, LLC*, 2019 IL App (1st) 180696, ¶ 10. In interpreting a statute, no part should be rendered meaningless or superfluous. *Id.* The court is not at liberty to depart from the plain language of a statute by reading into it exceptions, conditions, or limitations that the legislature did not express. *Id.*

¶ 61    First, Revite contends that, because the Association did not assert a statutory cause of action, the Act does not provide the Association with authority to recover attorney fees. This argument ignores the plain language of the statute, which states that attorney fees incurred due to a default under the declaration (*i.e.*, the condominium instruments) are recoverable. The statute does not say that fees are only recoverable if a unit owner defaults under the statute; instead, it specifically and unequivocally refers to a breach of the condominium instruments. If attorney fees were only recoverable for a statutory cause of action, a portion of the statute will be rendered meaningless.

¶ 62    The Association not only has a statutory right to attorney fees, but it has a contractual right to attorney fees under the declaration. Article XI of the declaration expressly provides that the Association can recover attorney fees if forced to initiate legal action against a defaulting unit owner:

> "Any and all costs and expenses incurred by the Association in the exercise of its authority as granted in this Article XII, including but not limited to court costs, reasonable attorneys'

fees as determined by a court of competent jurisdiction, and cost of labor and materials, shall be paid by the Unit Owner in violation ***."

Thereafter, article XI of the declaration provides:

"Any Unit Owner in default hereunder or under the provisions of the Bylaws or any rule or regulation adopted by the Association shall pay to the Association, as an agreed Common Expense with respect to his Unit, all attorneys' fees incurred by the Association in enforcing the provisions of the Bylaws, this Declaration, or the rules and regulations of the Association as to which the Unit Owner is in default."

¶ 63     Revite is responsible for the attorney fees the Association incurred enforcing the declaration against it. In *Yorkshire Village Community Ass'n*, the court held that condominium declarations and bylaws are covenants running with the land and the same is true of a covenant to pay attorney fees for the enforcement of other covenants. 170 Ill. App. 3d at 163. See also *334 Barry in Town Homes, Inc. v. Fargo*, 205 Ill. App. 3d 846, 850-51 (1990).

¶ 64     Second, Revite contends that the Association is not entitled to attorney fees because it did not hold an internal disciplinary hearing before filing its lawsuit. As an initial matter, Revite failed to support this contention with admissible evidence, and instead made a bare unsupported statement without reference to an affidavit, transcript or other evidentiary material. Any factual dispute must be established by affidavits or deposition testimony of evidentiary facts which support the position of the opposing party. *Phillips v. United States Waco Corp.*, 163 Ill. App. 3d 410, 416 (1987). Conclusions, unsupported by facts admissible in evidence, do not create a genuine material issue of fact. *Lesnik v. Estate of Lesnik*, 82 Ill. App. 3d 1102, 1106 (1980).

¶ 65    Furthermore, Revite essentially asserts that the Association did not comply with a condition precedent, but Revite fails to satisfy Illinois Supreme Court Rule 133(c), which provides:

"In pleading the performance of a condition precedent in a contract, it is sufficient to allege generally that the party performed all the conditions on his part; if the allegation be denied, the facts must be alleged in connection with the denial showing wherein there was a failure to perform."

¶ 66    In its amended complaint, the Association alleged that it "has performed all of its obligations under the terms and conditions of the declaration," and Revite responded with nothing more than a blanket denial. Likewise, Revite did not assert any affirmative defense that raised the alleged deprivation of an internal disciplinary hearing. A general denial to an allegation of the performance of a condition precedent in a contract is treated as an admission of that performance. *Deutsche Bank National Trust Co. v. Roongseang*, 2019 IL App (1st) 180948, ¶ 23. To comply with Rule 133(c), a party must set forth the specific conditions that the opposing party failed to perform. *Id*. The specific denial required by Rule 133(c) may be contained in an affirmative defense. *Id*. Revite, having failed to properly address the hearing issue during the summary judgment proceedings or assert the failure to comply with a condition precedent in accordance with Rule 133(c), has forfeited the argument that it was deprived of a prelitigation disciplinary hearing.

¶ 67    However, even assuming that Revite was deprived of a hearing and properly presented that issue to the trial court, that deprivation would not have any bearing on the right to recover attorney fees under the Act (wherein there is no requirement of a hearing). In *Board of Managers of Village*

*Square I Condominium Ass'n v. Amalgamated Trust & Savings Bank*, the court held that a suit for injunctive relief and attorney fees was not an attempt to levy a reasonable fine and the mandatory provision for notice and an opportunity to be heard under the Act was not relevant to a claim for injunctive relief that sought to also recover attorney fees. 144 Ill. App. 3d 522, 529 (1986).

¶ 68    Finally, Revite challenges the amount of the Association's attorney fee award, which was entered after the trial court heard testimony from the Association's attorney at an evidentiary hearing. According to Revite, the award was not supported by admissible evidence, and this case is too insignificant and unimportant to justify the attorney fee award that was entered in the Association's favor.

¶ 69    A court of review may not reverse an award of attorney fees merely because it may have reached a different conclusion. *U.S. Bank N.A. v. Randhurst Crossing LLC*, 2018 IL App (1st) 170348, ¶ 78. When the trial court's findings of fact depend upon the credibility of a witness, the reviewing court should defer to the trial court's findings unless they are against the manifest weight of the evidence. *Aliano v. Sears, Roebuck & Co.*, 2015 IL App (1st) 143367, ¶ 12.

¶ 70    Notably, there is no transcript for the evidentiary hearing on the petition for attorney fees. "An appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Because there is no transcript of the hearing on the Association's petition for attorney fees, there is no basis for setting aside the fee

award entered by the trial court. Ultimately, after hearing evidence, the trial court entered an attorney fee award that it believed was reasonable. The trial judge, who handled this case from its inception and through the evidentiary hearing on attorney fees, was best suited to determine an appropriate attorney fee award.

¶ 71                                    III. CONCLUSION

¶ 72     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 73     Affirmed.