BOARD OF MANAGERS OF VILLAGE SQUARE I CONDOMINIUM AS-
SOCIATION, Plaintiff-Appellant, v. AMALGAMATED TRUST AND SAV-
INGS BANK, Trustee, *et al.*, Defendants-Appellees.

Second District   No. 85—0460

Opinion filed June 20, 1986.

Steven P. Bloomberg and George H. Klumpner, both of Moss & Bloomberg, Ltd., of Bolingbrook, for appellant.

Diane E. Ward, of Kolb & Grotto, Ltd., of Glen Ellyn, and Jerold S. Rawson, of Wheeling, for appellees.

JUSTICE STROUSE delivered the opinion of the court:

This action was brought as a complaint for breach of contract and for injunctive relief to enjoin the use of a residential condominium unit for a commercial babysitting service in violation of provisions prohibiting such commercial use in both the declaration of covenants and the bylaws of the condominium association. The trial court granted defendants' motion for a directed verdict because plaintiff did not comply with the notice and hearing requirements imposed by section 18.4(1) of the Condominium Property Act.

In August 1983, David Erbstroesser (tenant) and his wife moved into a two bedroom condominium unit at 7303-6 Winthrop Way. This unit was owned by Daniel Dvorkin, as agent/beneficiary under trust No. 87096, and the Amalgamated Trust and Savings Bank, as trustee under the same trust (hereinafter lessors). The condominium complex was governed by the board of managers of the Village Square I Condominium Association (the association).

Testimony revealed that beginning sometime in August 1983, there were 8 to 10 children coming to tenant's unit for day-care service. On August 31, 1983, the association's managing agent advised lessor by mail that "your new tenants *** are running a daycare center out of your unit." Since this activity violated the condominium regulations, the letter went on to state: "The Association Board will not permit this business to be conducted." No deadlines were given. In a letter dated October 17, 1983, the association's attorney wrote lessor, advising him that his tenants were operating a day-care center in their unit in violation of the declaration of convenants. In this letter the association notified lessor that the "violation *** shall be cured within 30 days from receipt of this notice or be subject to the provi-

sions of Article 20 relative to the remedies and rights of the Board of Directors."

Nothing in the record shows that the parties further discussed this matter until March 26, 1984, when tenant's attorney complained that other tenants in the apartment complex were offering day-care services in their units, and asked why his client was being singled out. On April 4, counsel for the association responded that they were unaware of other individuals conducting similar activities in the complex. The letter closed: "I would urge you to request that your client's [sic] cease from the current activity so as to bring themselves within the provisions of the Declaration."

On August 31, 1984, the association filed this complaint, alleging a breach of provisions in the condominium declarations and bylaws which prohibit the use of any condominium unit for other than residential purposes. Specifically, the complaint alleged that the tenant in possession was "permitting daycare babysitting services to be conducted in the unit." On October 29, 1984, tenant filed a *pro se* answer wherein he admitted that the "daytime child care service [was] of limited scope, both in number and selection of local children." On October 28, lessors answered stating they had insufficient knowledge whether child care services were being offered by their tenant.

On November 29, 1984, tenant wrote to the association, again admitting the use of the unit for child-care services. In this letter he requested an early hearing before at least three members representing the association on the matter. No hearing was ever held by the association pursuant to tenant's request. On January 14, 1985, tenant, by his counsel, motioned for a deferment of the trial date. This motion included the November 29 letter.

On February 15, 1985, the association sent to lessor and tenant a notice that they were in violation of the association's bylaws and declaration. It allowed 30 days for compliance, with the threat of termination of possession for noncompliance. On February 28, 1985, tenant filed a "Notice of Cessation of Child-Care Activity." The document stated that tenant "beginning 1 February 1985 with full and final termination by 15 March 1985, has ceased and abandoned all activity of 'child-day-care' service in his unit (Phase I)."

On March 12, 1985, lessors filed a motion to dismiss the association's complaint on the basis that the association had commenced this lawsuit prior to the expiration of the 30-day notice served on tenant on February 15, 1985, claiming violation of section 309.2 of the Condominium Property Act (Ill. Rev. Stat. 1983, ch. 30, par. 309.2) and section 9—104.1(a) of the Code of Civil Procedure (Ill. Rev. Stat.

1983, ch. 110, par. 9—104.1(a)). The trial court granted lessors' motion in part by striking the paragraph of the complaint which contained a request for termination of tenant's possession. In that same order, the trial court set the case for trial.

On April 11, 1985, the association filed a petition, supported by affidavit, for attorney fees in the amount of $1,927.50. On that same day, lessors filed motions for summary judgment and for leave to file an affirmative defense of *laches*. The trial court denied lessors' motion for summary judgment, granted lessors leave to file their affirmative defense, granted the association 14 days to reply to the affirmative defense, and set the case for trial on May 1, 1985.

The case proceeded to trial on May 1, 1985. At the conclusion of the association's case, defendants moved for a directed finding. One of the arguments advanced by defendants was that they were denied their "statutory right to a hearing before the Board of Managers of the Association prior to the institution of a lawsuit against them." The court took defendants' motion under advisement, and requested the parties to submit legal authorities in support of their positions before May 9, 1985.

On May 9, 1985, the court denied defendants' motion for a directed finding and continued the case to May 22, 1985. In announcing its ruling, the court stated: "I am not ruling on whether or not, at this junction whether or not the plaintiff's [sic] must require an inhouse hearing prior to filing the suit. I would like some more law on that issue."

On May 22, 1985, defendants made an oral motion for reconsideration on the motion for directed finding claiming section 18.4 of the Condominium Property Act requires a hearing as a prerequisite to filing a suit for injunctive relief that includes a prayer for attorney fees. The association argued that no such requirement was either expressly contained in the statute or intended by the General Assembly. Prior to announcing its ruling, the judge defined the question presented in the following terms: "The question is: Is the imposition of attorney fees a penalty, which mandates, or requires a hearing before the local board?"

That same day, the trial court entered an order granting defendants' motion for directed verdict and stated: "The basis of granting Defendants [sic] motion *** is that the plaintiff did not comply with the notice requirements contained in Ill. Rev. Stat., ch. 30, paragraph 318.4(L) (1984)." The association filed its notice of appeal on June 10, 1985.

■ We must first decide whether section 18.4(L) of the Condo-

minium Property Act applies to the Village Square I Condominium Association. No Illinois court has construed this section of the Act, and, of the seven states which have adopted language similar to this section, only Pennsylvania has construed it. (See Ill. Ann. Stat., ch. 30, par. 318.4, Historical and Practice Notes, at 269 (Smith-Hurd Supp. 1985).) In *Society Hill Towers Owners Association v. Matthew* (1982), 306 Pa. Super 13, 451 A.2d 1366, the Pennsylvania court addressed defendants' contention that their due process rights were violated by not granting them a hearing before the association prior to seeking judicial relief. The court determined that the Act was inapplicable because the Society Hill Towers Owners Association was incorporated prior to the State's adoption of the Condominium Act.

The Declaration of Condominium Ownership of Village Square I Condominium was recorded as document No. R72-14413 on March 23, 1972. Applying the reasoning of the Pennsylvania court, the trial court could not retrospectively apply the statutory requirement for a hearing here. However, section 2.1(a) of the Condominium Property Act reads as follows:

"The following Sections of this Act apply pursuant to this Section 2.1 only with respect to [the] events and circumstances occurring after the effective date of this Section 2.1, and unless otherwise expressly provided in another Section of this Act, do not invalidate any existing provisions of the declaration, bylaws or other condominium instruments of these condominiums or any other vested rights; *** Sec. 18.4 (Powers and duties of Board of Managers)." (Ill. Rev. Stat. 1983, ch. 30, par. 302.1(a).)

The Pennsylvania Act does not contain this applicability section and is therefore not helpful for our analysis. The Illinois legislature added section 2.1 to the Condominium Property Act by Public Act 83—833, effective July 1, 1984. The historical and practice notes of this section comment that "[s]ubsection 2.1(a) lists those sections of the Condominium Property Act which, pursuant to the new section, are intended to apply to all events and circumstances occurring after July 1, 1984, in all condos, irrespective of the date of the recordation of their declaration." (Ill. Ann. Stat., ch. 30, par. 302.1, Historical and Practice Notes, at 219 (Smith-Hurd Supp. 1985).) Section 18.4 is included among the list of applicable sections. Therefore, since the association's complaint was filed August 30, 1984, and alleged a continuing violation of the association's declaration and bylaws, we hold that section 18.4 of the Condominium Property Act (Ill. Rev. Stat. 1983, ch. 30, par. 318.4) is applicable.

■ The next issue concerns the application of section 18.4(L) of the Condominium Property Act to the events in this cause. Here, the association was confronted with one of its tenants conducting a day-care center in a residential unit. Article 20 of the Declaration of Condominium Ownership of the Village Square I Condominium Association provides the authority for the association and board of managers to act. In pertinent part, article 20 states:

> "20. REMEDIES. In the event of any default by any Unit Owner under the provisions of the Act, Declaration, By-Laws, or rules and regulations of the Board, the Board or its agents shall have each and all of the *rights and remedies which may be provided for in the Act, Declaration, By-Laws,* or said rules and regulations or which may be available at law or in equity, and *may prosecute any action* or other proceeding against such defaulting Unit Owner and/or others \*\*\* *for damages or injunction* or specific performance, \*\*\* *or for any combination of remedies or for any other relief.* All expenses of the Board in connection with any such actions or proceedings, *including court costs and attorneys' fees* \*\*\* shall be charged to and assessed against such defaulting Unit Owner \*\*\*." (Emphasis added.)

The association elected to seek an injunction to enforce its rights. A number of decisions have considered injunctive relief as appropriate to enforce a breach of a covenant. (*Amoco Realty Co. v. Montalbano* (1985), 133 Ill. App. 3d 327; *Forest Glen Community Homeowners Association v. Nolan* (1982), 104 Ill. App. 3d 108, 112; see also *Belvidere South Towne Center, Inc. v. One Stop Pacemaker, Inc.* (1977), 54 Ill. App. 3d 958.) In its pleadings, the association also sought an award of reasonable attorney fees.

Tenant argued below, and in this court, that the association's request for the assessment of attorney fees was an attempt to levy a fine or a penalty which triggered section 18.4(l) of the Condominium Property Act. Section 18.4 of the Condominium Property Act reads:

> "Powers and Duties of Board of Managers. The board of managers shall exercise for the association *all powers, duties and authority vested therein by* law or the condominium instruments except for such powers, duties and authority reserved thereby to the members of the association. The powers and duties of the board of managers *shall include, but shall not be limited to,* the following matters:
> \* \* \*
> *(1)* Impose charges for late payments of a unit owners pro-

portionate share of the common expenses, *or any other expenses lawfully agreed upon,* and after notice and an opportunity to be heard, levy reasonable fines for violation of the Declaration, By-Laws, and rules and regulations of the association." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 30, par. 318.4(1).

In characterizing the assessment of attorney fees as a fine, the trial court relied on *Model Industries, Inc. v. Walsh Press & Die Co.* (1982), 111 Ill. App. 3d 572. In *Model Industries,* the court stated that the statutory provision allowing for the recovery of attorney fees was penal in nature. (111 Ill. App. 3d 572, 575.) The essence of *Model Industries* is that section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—611), and not the awarding of attorney fees in general, is penal. See also *People ex rel. Donelson v. Cowling* (1984), 128 Ill. App. 3d 886, 889-90; *In re Eatherton* (1983), 119 Ill. App. 3d 174, 177-78; *Third Establishment, Inc. v. 1931 North Park Apartments* (1981), 93 Ill. App. 3d 234, 243.

Where a statutory provision has not been judicially interpreted, "a court is guided by both the plain meaning of the language in the statute as well as legislative intent. [Citation.] The statutory language is the best indication of the intent of the drafters. [Citation.]" *Tisoncik v. Szczepankiewicz* (1983), 113 Ill. App. 3d 240, 245.) When the statutory language is clear and unambiguous, the court's only function is to enforce the law as enacted. *Price v. State Farm Mutual Automobile Insurance Co.* (1983), 116 Ill. App. 3d 463, 470.

In the instant case, the trial judge dismissed the case after he found that the association's request for attorney fees was in the nature of a fine, which, pursuant to section 18.4(1) of the Condominium Property Act, could not be imposed absent a "notice and an opportunity to be heard." (Ill. Rev. Stat. 1983, ch. 30, par. 318.4(1).) No case has been found which states that an award of attorney fees is in the nature of a fine which would trigger a provision like that in section 18.4(1) of the Condominium Property Act. The attorney fees here were requested pursuant to article 20 of the Declaration of Condominium Owners of Village Square I Condominium Association which allows for "[a]ll expenses of the Board in connection with any such action or proceedings, including court costs and attorney fees." The plain language of section 18.4(1) reflects one power of a nonexclusive list of powers and duties granted to the board of managers of a condominium association. Subsection (1) includes the power (1) to impose

charges for late payments or any other expense lawfully agreed upon (for which no notice or opportunity to be heard is needed); and (2) to levy reasonable fines for violations of the declarations, bylaws and rules and regulations of the association (after notice and an opportunity to be heard has been given).

A suit for injunctive relief and attorney fees is not an attempt to levy a reasonable fine, and so, the mandatory provision for notice and opportunity to be heard, under this section, is not relevant in this case. The trial judge erred in determining that attorney fees here are penal in nature.

■ Tenant next argues that we should affirm the decision of the lower court, even if the reason given by the judge is erroneous, if there is a justification for such affirmance. (*Matter of Estate of Rice* (1985), 130 Ill. App. 3d 416, 429; *Long v. Soderquist* (1984), 126 Ill. App. 3d 1059, 1062.) Here tenant contends that the dismissal was appropriate because the association failed to avail itself of an adequate remedy at law. *La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318 (equity should not assume jurisdiction where an adequate remedy at law exists).

Tenant proposes that the association should have proceeded under the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 9—101 *et seq.*). However, the Code of Civil Procedure does not provide a complete remedy here. The forcible entry and detainer provisions of the Code are of limited scope, related only to issues of termination of the right of possession. They do not address the broader issues of the association's complaint, the enjoining of the breach of the restrictive covenant which prohibits commercial activity.

■ To be an adequate remedy at law which will deprive equity of its power to grant injunctive relief, the remedy must be concise, complete, and provide the same practical and efficient resolution as the equitable remedy would provide. (*Board of Education of Niles Township High School v. Board of Education of Northfield Township High School* (1983), 112 Ill. App. 3d 212, 217-18.) Further, the breach of a covenant itself is sufficient reason to enjoin its violation. (*Forest Glen Community Homeowners Association v. Nolan* (1982), 104 Ill. App. 3d 108, 112, and cases cited therein.) For this reason we find that the Association was not required to proceed under the forcible entry and detainer provisions of the Code of Civil Procedure.

■ Tenant finally argues that under *Wolinsky v. Kadison* (1983), 114 Ill. App. 3d 527, "a board's proper exercise of its fiduciary or quasi-fiduciary duty requires strict compliance with the condominium declaration and bylaws. Therefore, when the declaration or bylaws

provide procedures to govern board action, those procedures should be followed." (114 Ill. App. 3d 527, 534.) Tenant contends that the association's failure to send required notices and failure to provide a hearing constituted a breach of duty which should be a ground for the denial for its request for injunctive relief. See *St. Francis Courts Condominium Association v. Investors Real Estate* (1982), 104 Ill. App. 3d 663 (board's failure to follow the procedures set forth in its declaration for amendment of the declaration resulted in the proposed amendment being ineffective); *Bramson v. Beau Monde, Inc.* (Fla. App. 1982), 415 So. 2d 761 (board's failure to comply with the requirements of the condominium declaration resulted in the voiding of the action they had taken).

While the board's exercise of its fiduciary duty certainly requires strict compliance with the Declaration of Condominium Ownership of Village Square I Condominium, a close reading of that declaration reveals that there is no mandatory prerequisite for a hearing or for notice written into article 20. Article 20 of the Declaration of Condominium Ownership of the Village Square I Condominium Association, as pertinent, provides:

"20. REMEDIES. In the event of any default by any Unit Owner under the provisions of the Act, Declaration, By-Laws, or rules and regulations of the Board, the Board or its agents shall have each and all of the rights and remedies which may be provided for in the Act, Declaration, By-Laws, or said rules and regulations or which may be available at law or in equity, and *may prosecute any action* or other proceeding against such defaulting Unit Owner and/or others for enforcement of any lien and the appointment of a receiver for the Unit and ownership interest of such Unit Owner, *or for damages or injunction or specific performance,* or for judgment for payment of money and collection thereof, or the right to take possession of the Unit and to sell the same as hereinafter in this paragraph provided, or for any combination of remedies or for any other relief. All expenses of the Board in connection with any such actions or proceedings, *including court costs and attorneys' fees and other fees and expenses* *** the Board, shall have the authority to correct such default, and to do whatever may be necessary for such purpose, and all expenses in connection therewith shall be charged to and assessed against such defaulting Unit Owner. Any and all such rights and remedies may be exercised at any time and from time to time, cumulatively or otherwise, by the Board.

If any Unit Owner (either by his own conduct or by the conduct of any other occupant of his Unit) *shall violate any of the covenants or restrictions* or provisions of this Declaration or the regulations adopted by the Board, and such violation *shall not be cured within thirty (30) days after* notice in writing from the Board, or shall re-occur more than once thereafter, then the Board *shall have the power to issue to said defaulting Owner a 10-day notice in writing to terminate the rights of said defaulting Owner to continue as a Unit Owner and to continue to occupy, use or control his Unit,* and thereupon an action in equity may be filed by the Board against said defaulting Owner for a decree of *mandatory injunction against said defaulting Owner* or occupant or (subject to the prior consent in writing of any mortgagee having a security interest in the Unit Ownership of said defaulting owner, which consent shall not be unreasonably withheld), in the alternative, for a decree declaring the termination of said defaulting Owner's right to occupy, use or control the Unit ***." (Emphasis added.)

Nowhere in article 20 is there a reference to a mandatory hearing. The 30-day and 10-day notice provisions are not mandatory prerequisites to the filing for injunctive relief. The language of the remedy provision in article 20 is simply "if *** such violation shall not be cured within 30 (thirty) days after notice in writing from the Board, ***, the Board *shall have the power to issue* to said defaulting Owner a 10-day notice in writing to terminate the rights of said defaulting Owner to continue as a Unit Owner ***, *and thereupon an action in equity may be filed* by the Board against said defaulting Owner ***." (Emphasis added.) There was no attempt to terminate ownership or possession here.

In any event, the correspondence of August 31, 1983, October 17, 1983, and April 4, 1984, sufficiently provided notice to the tenant and lessors. In the letter of August 31, 1983, the Association advised lessors that "your new tenants *** are running a daycare center out of your unit. Since this is a violation of Condominium regulations, please so advise your tenants that the Association Board will not permit this business to be conducted in your condominium unit." The letter of October 17, 1983, stated: "Pursuant to the Declaration, Article 20, and on behalf of the Board of Directors, you are hereby notified that the violation of the Declaration shall be cured within 30 days from receipt of this notice or be subject to the provisions of Article 20 relative to the remedies and rights of the Board of Directors." In the letter of April 4, 1984, tenant's attorney is advised: "Based upon a prior con-

versation with your client and your letter, it would appear that there is no questions, [*sic*] but that your client's [*sic*] are in fact conducting a day care or child care service within the unit that they are occupying. This is strictly in violation of Article XVIII of the Declaration of Condominium Ownership. Please be advised that Village Square Condominium Association No. I does not condone anyone operating a business for profit within their unit except as specifically provided for in the Declaration. If the Association is made aware of other individuals who are conducting similar activities within the Association, action will be taken to compel compliance with the Declaration as to those individuals. Please be assured that the Association is not acting solely against your client, but would proceed against anyone who is in violation of the Declaration." In addition, the tenant admitted the violations on October 29 and November 29, 1983, and filed a declaration that he would cease the prohibited activity by March 15, 1985.

In light of these acts by the tenant, a hearing or further notice is not necessary. The action of the trial court in dismissing the cause was error and must be reversed.

Reversed and remanded.

LINDBERG and REINHARD, JJ., concur.